UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK GOTTSLEBEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>INFORMA MEDIA, INC. F/K/A PENTON MEDIA, INC.,<br><br>        Defendant. | CASE NO. 1:22-cv-00866-HYJ-RSK<br>CLASS ACTION<br><br>Chief Judge Hala Y. Jarbou<br>Magistrate Judge Ray Kent |

# MEMORANDUM IN SUPPORT OF
# DEFENDANT INFORMA MEDIA, INC.'S MOTION TO DISMISS

130002129

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | Introduction | 5 |
| II. | Factual Background | 6 |
| III. | Legal Standard | 7 |
| IV. | Argument | 9 |
| | A. Plaintiff's Claims Are Barred by the Applicable Statute of Limitations | 9 |
| | B. The Complaint Fails to State a Claim Under Rule 12(b)(6) | 11 |
| V. | Conclusion | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................. 8, 12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .......................................................................................... 7, 8, 14

*Bishop v. Lucent Techs., Inc.*,
 520 F.3d 516 (6th Cir. 2008) ..................................................................................... 14

*Browning v. Buko*,
 2022 WL 4117478 (Mich. Sept. 9, 2022) ........................................................... 9, 10, 11

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
 648 F.3d 365 (6th Cir. 2011) ....................................................................................... 8

*Gladych v. New Family Homes, Inc.*,
 468 Mich. 594 (2003) ................................................................................................ 10

*Krassick v. Archaeological Ins. of Am.*,
 2022 WL 2071730 (W.D. Mich. June 9, 2022) (Jarbou, J.) .......................................... 9

*Nashel and Robinson v. The New York Times Company*,
 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) ..................................................... 12, 13

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
 650 F.3d 1046 (6th Cir. 2011) ..................................................................................... 8

*Patti DelValle v. Informa Media, Inc*,
 No. 22-00132 ............................................................................................................. 5

*Pratt v. KSE Sportsman Media, Inc.*,
 586 F. Supp. 3d 666 (E.D. Mich. 2022) ..................................................................... 9

*Rhodes v. R & L Carriers, Inc.*,
 491 F. App'x 579 (6th Cir. 2012) ................................................................................. 8

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
 859 F.2d 434 (6th Cir. 1988) ....................................................................................... 8

*Wheaton v. Apple Inc.*,
 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ............................................................ 13

**Statutes**

M.C.L. § 445.1712 (1989) ............................................................................................... 11

M.C.L. § 445.1715(2) ........................................................................................................ 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................*passim*

I.   INTRODUCTION.

As this Court is aware, this case is just the latest of dozens of copy-cat lawsuits brought by the lawyers in this Court, aiming to take advantage of the now-removed statutory damages provision in Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), id. § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"). But the Court may not be aware that this is the second case against Informa Media, Inc. ("Defendant") filed by the plaintiffs' firm. After the first case was dismissed when it was discovered that the named plaintiff was never a subscriber of the *Michigan Farmer* magazine at issue, the firm found another plaintiff and filed this second lawsuit.[1] Notably, this case is riddled with defects, not the least of which is the utter lack of any factual investigation or due diligence to support the bold conclusory allegations in the Complaint, even in the face of a sworn affidavit from Defendant attesting to the falsity of the allegations. These allegations will be tested in due course, but as a threshold matter, this case is "a day late and a dollar short."

Because the state legislature amended the PPPA on July 31, 2016, to remove the availability of statutory damages, the only potentially actionable claim by Plaintiff Mark Gottsleben ("Plaintiff") are from July 31, 2016. However, Plaintiff did not file this lawsuit until September 19, 2022, more than six years after the last day that claims were available. The reality is that even under a six-year statute of limitation, time is up. Plaintiff's claims are time-barred.

Even if the claims are not time-barred, Plaintiff has blatantly failed to state a viable claim under Rule 12(b)(6) for violation of the PPPA. Plaintiff alleges generally that Defendant wrongfully disclosed the "Private Reading Information" ("PRI") and other individualized

---

[1] The first case, *Patti DelValle v. Informa Media, Inc*, No. 22-00132, was filed on June 1, 2022, and dismissed on August 17, 2022. DelValle is also a plaintiff in other identical PPPA suits.

5

information of Plaintiff and *Michigan Farmer* magazine subscribers "during the relevant pre-July 31, 2016 time period," in violation of the PPPA. But this allegation, and the entire Complaint, lacks sufficient factual support. Instead, Plaintiff's entire claim is based on conclusory and threadbare allegations that fall short of the requirements for pleading a cause of action under Rule 12(b)(6). The Complaint includes no facts whatsoever about the disclosure of **any** *Michigan Farmer* customer information, including Plaintiff's information. Plaintiff does not say who supposedly received his information, whether his information was aggregated with other information and sold, or when these disclosures occurred. The only document on which Plaintiff bases his claim—as admitted to by his counsel—is a screenshot of a third-party list broker's website indicating, at most, an "agriculture Masterfile" of subscribers to one or more of *over two dozen* publications "through 5/19/2021." (Compl. ¶ 2.) This third-party screenshot is not only unauthenticated, but it fails to identify the availability of any *Michigan Farmer* subscriber information, much less Plaintiff's information, from the relevant time period of before July 31, 2016. Accordingly, the case is based on pure conjecture, is not brought in good faith, and should be dismissed under Rule 12(b)(6) even if the Court concludes that the claims are not time-barred.

## II. FACTUAL BACKGROUND.

Apart from claiming Plaintiff "saw a dramatic uptick of junk mail in his inbox," (Compl., ¶ 3), the Complaint does not allege facts regarding Plaintiff's personal experience in any way. Indeed, Plaintiff fails to allege the dates of his subscription to *Michigan Farmer*, how he subscribed, or whether his subscription information is available for sale by any data list broker.

Instead, the Complaint speaks in generalities about how the data broker industry works and asks the reader to make significant leaps in logic to assume that Plaintiff's personal information was disclosed without authorization to third parties prior to July 31, 2016. There are no facts in

6
130002129

the Complaint whatsoever establishing or even suggesting that Plaintiff's information was disclosed to anyone at any time. Plaintiff states in conclusory fashion that Defendant "rented, exchanged, and/or otherwise disclosed" its customers' PRI—*i.e.*, names, home addresses, and the titles of publications subscribed to—to third parties without consent or notice, and that such disclosures violated the PPPA. (Compl., ¶¶ 1, 6). But Plaintiff does not provide any facts to suggest that Defendant *actually disclosed* anyone's information—much less Plaintiff's—during the relevant time period (*i.e.*, before July 31, 2016).

Despite hundreds of pages of exhibits and multiple pages of generalized allegations, Plaintiff's entire case against Defendant seems to turn on the one-page data card found in paragraph 2, which is a data card from *third party* NextMark, Inc., showing the purported availability of the *Michigan Farmer* magazine mailing list—one of over *two dozen* other publications listed on that screenshot—through May 19, 2021, several years after the purported relevant time period. (Compl., ¶ 2). Although Plaintiff subscribed to *Michigan Farmer* magazine before July 31, 2016, Plaintiff claims this unauthenticated third-party data card is evidence of unauthorized disclosure of Plaintiff's subscription and demographic information in the statutory time period. (Compl., ¶ 10) Based on this "discovery," and in blatant disregard of a sworn affidavit attesting otherwise, Plaintiff filed this class action seeking to represent a class of Michigan residents who allegedly had their PRI disclosed to third parties by Defendant without notice or consent prior to July 31, 2016. (Compl., ¶ 50).

### III. LEGAL STANDARD.

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to

7

state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If the plaintiff does not "nudge[ ] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). A complaint "must assert sufficient facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests." *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

//

//

## IV. ARGUMENT.

### A. Plaintiff's Claims Are Barred by the Applicable Statute of Limitations.

The instant action was filed on September 19, 2022. The Complaint includes a request for relief on behalf of the named plaintiff and a putative class in the form of $5,000 in statutory damages for each purported violation. (Compl., ¶ 74.) To be entitled to a statutory damages award, the cause of action must have arisen on or before July 31, 2016, and must have been filed (at the latest) within 6 years of the date the purported disclosure occurred.[2] *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp.3d 666, 675 (E.D. Mich. 2022).

Plaintiff's claims are barred by the statute of limitations. While the law is unsettled as to whether a three-year or a six-year statute of limitations applies to PPPA claims, both periods expired before this lawsuit was filed, the distinction should now be moot, and the case should be dismissed. Six years from July 31, 2016, passed on July 31, 2022. This lawsuit was not filed until September 19, 2022, well after the expiration of the statute of limitations.

Plaintiff contends that he is entitled to certain relief from the limitations period based on the Governor's Executive Order No. 2020-58 ("Executive Order") and Michigan Supreme Court's Administrative Orders in response to the COVID-19 pandemic. (*See* Compl., ¶ 1 n.1.) These orders purport to toll statutory limitations periods under Michigan law for what ultimately amounts to a period of 101 days between March 10, 2020, and June 20, 2020. *See Browning v. Buko*, 2022 WL 4117478, at *1 (Mich. Sept. 9, 2022) (Viviano, J., dissenting). This would mean that the limitations period for Plaintiff's claim is extended to November 9, 2022. Plaintiff, however, is wrong.

---

[2] The PPPA was amended effective July 31, 2016, to eliminate any available recovery for statutory damages. *See* MCL § 445.1715(2). Defendant is aware that this Court has concluded that the six-year statute of limitations applies. *See Krassick v. Archaeological Ins. of Am.*, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022) (Jarbou, J.). Without conceding this issue, as set forth herein, the six-year statute of limitations has also expired, and the case should be dismissed.

9

As recognized by Plaintiff, the Executive Order applies to "all deadlines applicable to the *commencement* of all civil and probate actions and proceedings" and "the *commencement* of all civil and probate case types." (Compl., ¶1 n.1) (citing Mich. Supreme Court Administrative Order 2020-3, Mich. Executive Order No. 2020-58) (emphasis added). The Executive Order extended by 101 days the time for *filing* a claim; it certainly did not (and did not purport to) extend the cause of action for statutory damages. Indeed, an executive order could not override or extend the legislature's termination of causes of action for statutory damages.[3] Thus, on its face, the Executive Order applies only to the commencement of claims rather than extension of certain remedies found in causes of action. Even if Plaintiff is correct that his deadline to file a claim under the PPPA was tolled for 101 days, the remedy of statutory damages was not preserved as part of that tolling.

Nor do the Court's Administrative Orders save Plaintiff's claim. In *Browning*, the Michigan Supreme Court was asked to review the propriety of the tolling order but declined to take up the issue. *Id*. However, in a dissenting opinion, Michigan Supreme Court Justice David Viviano, joined by Justice Brian Zahra, acknowledged that the defendants' argument that these "administrative orders improperly exercised legislative power" was a "strong argument that merits our attention." *Id*. at *2. Indeed, it appears the Michigan Supreme Court lacks authority to issue "court rules that prevail over statutes." *Id*. It "may only do so in matters dealing with practice and procedure in the courts and not in matters involving substantive law," and the Court has previously held that "[s]tatutes regarding periods of limitations are substantive in nature." *Id*. (citing *Gladych v. New Family Homes, Inc.*, 468 Mich. 594, 600 (2003)). Thus, the Court concluded in the past

---

[3] This conclusion is also consistent with the legislative history of the 2016 Amendment, which provides, in pertinent part: "The amendatory act is curative and intended to clarify that the prohibitions on disclosing information . . . and that a civil action for a violation of those prohibitions may only be brought by a customer who has suffered actual damages as a result of the violation." S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016).

10

that "to the extent [a statute] enacts additional requirements regarding the tolling of the statute of limitations, the statute would supersede the court rule." *Id*. Thus, the Michigan Supreme Court Administrative Orders cannot extend the statutory limitations period.

An alternative ground for tolling would be under the Michigan Supreme Court's "equitable powers." *Id*. But as Justice Viviano noted in his dissent, "[e]quitable tolling is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights." *Id*. And "[a] pandemic during which the courts remain open to receive filings would not fit that bill and, unsurprisingly, it does not appear that our broad tolling orders have any historical precedent." *Id*. This is particularly true where, as here, the lawsuit at issue is being filed more than two years after the tolling period ended. Even if Plaintiff could argue that Plaintiff was prevented from exercising Plaintiff's rights during the height of the COVID-19 pandemic in 2020, there is no justification for Plaintiff's failure to file this lawsuit in 2021 or the first half of 2022. Thus, there is no basis for equitable tolling.

The Court should find that regardless of what limitations period is applied, it expired before this case was filed and this case should be dismissed, with prejudice.

### B. The Complaint Fails to State a Claim Under Rule 12(b)(6).

Even if Plaintiff's claim is not barred by the statute of limitations, it should be dismissed because the Complaint presents no facts to plausibly suggest that Defendant unlawfully disclosed Plaintiff's PRI to third parties in violation of the PPPA. To state a claim under the PPPA, the plaintiff must plead facts indicating that (i) the defendant disclosed information about the plaintiff without consent, and (ii) the information identified the plaintiff to the receiving party. M.C.L. § 445.1712 (1989) (barring disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the

identity of the customer"). Plaintiff's claim is based on the conclusory allegation that Defendant disclosed his PRI to "data aggregators, data appenders, data cooperatives, and list brokers . . . during the relevant pre-July 31, 2016 time period." (Compl., ¶ 1). Plaintiff does not allege any facts beyond this conclusory statement, and therefore fails to plead adequate facts for the Court to infer that it is plausible that Defendant is liable for a PPPA violation. *See Ashcroft*, 556 U.S. at 678.

Plaintiff does not identify any party who received Plaintiff's personal information, let alone how or when that disclosure occurred, including whether the disclosure occurred in the six years and 101 days before the filing date of September 19, 2022. Rather, Plaintiff's claim is based on conclusory allegations about disclosure (Compl., ¶¶ 1-2, 4, 6-7, 42-49, 61-74), along with more than 25 paragraphs addressing the history of the PPPA, comparable federal law, and the "private information market" industry in general. (*Id.*, ¶¶ 15-41).

Importantly, Plaintiff's so-called "documented evidence" of Defendant's PPPA violations also fails to plausibly support the conclusion that Defendant violated the PPPA before July 31, 2016. (*Id.*, ¶ 2 & Ex. A). Plaintiff relies on an unauthenticated *third-party* list broker's (NextMark) online data card dated **May 19, 2021**. (*Id.*). The data card shows only that sometime after May 19, 2021, (almost five years after any alleged statutory violation) a third-party (not Defendant) offered to sell certain subscriber information of over 24 publications, including *Michigan Farmer*. (*Id.*). The data card does not identify from where the information is obtained, what information it contains from any specific publication, or most importantly, that any *Michigan Farmer* subscriber information from before January 31, 2016, is contained therein.

Indeed, Judge Stephen Murphy of the Eastern District of Michigan recently dismissed a PPPA claim that attempted to rely on a NextMark data card. *See Nashel and Robinson v. The New*

12

*York Times Company*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022). Just like Plaintiff, the *Nashel* plaintiffs argued that an obsolete NextMark "mailing list" showing customer "counts" through June 30, 2007, supported an inference that the defendant violated the PPPA during the relevant pre-July 31, 2016, period. *Id.*, at *1. The court held that these allegations "fail to clear the plausibility threshold" because the data cards "were posted years before the relevant period," Plaintiffs' only "cure for the timing issue" was a "legal-conclusion inference" that made their allegations "merely *possible* rather than plausible," and the "data cards . . . fail to support a crucial element of Plaintiffs' alleged action: that *Defendant* engaged in the business of selling written material to disclose information personally identifying the customer." *Id.*, at *4-5 (emphasis in original) (citation omitted). The *Nashel* court was faced with the exact same PPPA claim as this Court is here, supported by a comparably outdated NextMark "mailing list" purporting to "count" individuals who made purchases years outside the period in which the PPPA claim accrued, and concluded that those allegations did not plausibly state a claim for relief. Judge Murphy refused to make what he called "a large inferential leap" and dismissed the complaint. *Id*. This case is substantially similar to the *Nashel* case—in fact, *Nashel* was one of the many cookie-cutter cases brought by the same attorneys who brought this case—and the result should be the same.

In yet another action alleging claims under the PPPA, the court dismissed a similar complaint against Apple for failure to plead plausible facts. *See Wheaton v. Apple Inc*., 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019). The court dismissed the plaintiffs' PPPA claim because "[t]he complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the data cards identified in the complaint "d[id] not show that Apple disclosed customers' personal listening information." *Id*. at *5. Again, the results here should be the same.

13
130002129

Because the Complaint does not allege facts that facially support the conclusion that Defendant plausibly violated the PPPA with respect to the named Plaintiff (or any putative class member), Plaintiff has not met the requirements for pleading a claim under the statute. *See, e.g., Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) ("[I]t is not enough for plaintiffs to argue that the complaint, because it is silent as to when they first acquired actual knowledge, must be read in the light most favorable to them and construed as not precluding the possibility that they will be able to prove facts establishing their entitlement to relief… A complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient.") Plaintiff's Complaint falls short of the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557. Thus, Plaintiff's claims fail to meet the pleading standards of Rule 12(b)(6) and should be dismissed.

## V. CONCLUSION.

For the foregoing reasons, the Complaint should be dismissed, with prejudice.

DATED: December 5, 2022

Respectfully submitted,

BLANK ROME LLP

By: */s/ Ana Tagvoryan*
    Ana Tagvoryan
    ana.tagvoryan@blankrome.com
    Harrison Brown
    harrison.brown@blankrome.com
    2029 Century Park East, 6th Floor
    Los Angeles, CA 90067
    Tel.: 424.239.3400
    Fax: 424.239.3434
Attorneys for Defendant
INFORMA MEDIA, INC.

# CERTIFICATE OF COMPLIANCE

The Memorandum in Support of Defendant Informa Media, Inc.'s Motion to Dismiss complies with the word count limitation of W.D. Mich LCivR 7.3(b)(i) because the brief contains 3,203 words, including headings, footnotes, citations, and quotations, and excluding the parts of the brief exempted under W.D. Mich LRevR 7.2(c). The word count was generated using Microsoft Word.

DATED: December 5, 2022

Respectfully submitted,

BLANK ROME LLP

By: */s/ Ana Tagvoryan*
    Ana Tagvoryan
    ana.tagvoryan@blankrome.com
    Harrison Brown
    harrison.brown@blankrome.com
    2029 Century Park East, 6th Floor
    Los Angeles, CA 90067
    Tel.: 424.239.3400
    Fax: 424.239.3434
Attorneys for Defendant
INFORMA MEDIA, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys or parties of record.

By: */s/ Ana Tagvoryan*
      Ana Tagvoryan