# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK GOTTSLEBEN, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> vs.<br><br>INFORMA MEDIA, INC. F/K/A PENTON MEDIA, INC.,<br><br>     Defendant. | CASE NO. 1:22-cv-00866-HYJ-RSK<br>CLASS ACTION<br><br>Chief Judge Hala Y. Jarbou<br>Magistrate Judge Ray Kent |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT INFORMA MEDIA, INC.'S
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

130179288

# TABLE OF CONTENTS

|      |                                                                              | Page |
|------|------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION                                                                 | 5    |
| II.  | FACTUAL BACKGROUND                                                           | 7    |
| III. | LEGAL STANDARD                                                               | 9    |
| IV.  | ARGUMENT                                                                     | 10   |
|      | A. Plaintiff's Claims Are Barred by the Applicable Statute of Limitations    | 10   |
|      | B. The FAC Fails to State a Claim Under Rule 12(b)(6)                        | 12   |
| V.   | CONCLUSION                                                                   | 17   |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974) ..................................................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 9, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 9, 10, 17

*Bishop v. Lucent Techs., Inc.*,
    520 F.3d 516 (6th Cir. 2008) ........................................................................................ 17

*Browning v. Buko*,
    2022 WL 4117478 (Mich. Sept. 9, 2022) ......................................................... 10, 11, 12

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) .................................................................................................. 12

*Coulter-Owens v. Time, Inc.*,
    695 Fed. Appx. 117, 2017 WL 2731309 (2017) ............................................................. 7

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) .......................................................................................... 9

*Gladych v. New Family Homes, Inc.*,
    468 Mich. 594 (2003) ................................................................................................... 11

*Krassick v. Archaeological Ins. of Am.*,
    2022 WL 2071730 (W.D. Mich. June 9, 2022) ............................................................ 10

*Nashel and Robinson v. The New York Times Company*,
    2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) ....................................................... 14, 15

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
    650 F.3d 1046 (6th Cir. 2011) ........................................................................................ 9

*Pratt v. KSE Sportsman Media, Inc.*,
    586 F. Supp. 3d 666 (E.D. Mich. 2022) ....................................................................... 10

*Rhodes v. R & L Carriers, Inc.*,
    491 F. App'x 579 (6th Cir. 2012) ................................................................................. 10

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
   859 F.2d 434 (6th Cir. 1988) ..............................................................................................9

*Wheaton v. Apple Inc.*,
   2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ....................................................................15

**Statutes**

M.C.L. § 445.1712 ......................................................................................................................12

M.C.L. § 445.1713 ......................................................................................................................12

MCL § 445.1715(2) .....................................................................................................................10

**Other Authorities**

Rule 12(b)(6) ....................................................................................................................... *passim*

## I. INTRODUCTION.

As this Court is aware, this case is just the latest of dozens of copycat lawsuits brought by the lawyers for Plaintiff Mark Gottsleben ("Plaintiff") in this Court, aiming to take advantage of the now-removed statutory damages provision in Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"). But, the Court may not be aware that this is the second case Plaintiff's lawyers have filed against Informa Media, Inc. ("Defendant"). After the first case was dismissed when it was discovered that the named plaintiff never subscribed to Michigan Farmer magazine,[1] the lawyers found another strawman and filed this second lawsuit. Notably, Plaintiff filed the instant First Amended Complaint (Dkt. No. 16, the "FAC") after Defendant filed a motion to dismiss for lack of any factual allegation regarding Defendant's sharing of Plaintiff's personal subscription information in 2016.

As a threshold matter, however, this case is "a day late and a dollar short." Because the state legislature amended the PPPA on July 31, 2016, to remove the availability of statutory damages, the only potentially actionable claims by Plaintiff are from July 31, 2016. Plaintiff, however, did not file this lawsuit until September 19, 2022, more than six years after the last day that claims were available. Even under a six-year statute of limitation, Plaintiff's claims are time-barred.

Notwithstanding the claims being time-barred, Plaintiff has also blatantly failed to state a viable claim under Rule 12(b)(6) for violation of the PPPA. Plaintiff infers generally that, because he received junk mail, it must be because Defendant disclosed the "Private Reading Information" ("PRI") and other individualized information of Plaintiff and Michigan Farmer magazine

---

[1] The first case, *DelValle v. Informa Media, Inc*, No. 22-00132, was filed on June 21, 2022, and dismissed on August 17, 2022. Ms. DelValle was also a plaintiff in other identical PPPA suits.

5

subscribers "during the relevant pre-July 31, 2016 time period" in violation of the PPPA. But apart from cherry-picked references to third-party website reports, Plaintiff provides no real facts to substantiate this conclusion or get it past the speculative level. In other words, the FAC lacks sufficient factual support.

The version of the PPPA at issue—i.e., the pre-July 31, 2016, version of the statute—forbid the knowing disclosure of personally identifying information of subscribers without notice and an opportunity to opt out. The FAC includes no facts whatsoever about the disclosure of ***any*** Michigan Farmer customer information, including Plaintiff's information, between April 15, 2016, and July 30, 2016,[2] to third-party appenders or aggregators for purposes that may have led to Plaintiff's receipt of junk mail. Even at a basic level, Plaintiff does not say who supposedly received his information, whether his information was aggregated with other information and subsequently sold, when these disclosures occurred, or how his damages (receiving junk mail) relate to the purported wrongful conduct.

The only "documentary evidence" on which Plaintiff bases his claim are (1) a screenshot of a *third-party* list broker's website from **2022** indicating, at most, access to an "agriculture Masterfile" of subscribers to one or more of *over two dozen* publications "through 5/19/**2021**" (Compl. ¶ 2.); (2) third-party news stories about Defendant's predecessor's *business-to-business* commercial marketing arm, which include no mention about the sale of consumer personal subscriber information at all, much less during the relevant time period; and (3) Defendant's predecessor's *general* online privacy policy from July 10, 2016. None of these three categories of documents relate specifically to Michigan Farmer or to any of FarmProgress' suite of magazines,

---

[2] Plaintiff alleges the relevant time period is April 15, 2016, and July 30, 2016, if his "tolling" theories are accepted. (FAC, ¶ 1 n.1). By referring to this period, Defendant does not concede, and in fact still disputes, that Plaintiff has a claim from facts going back to April 15, 2016.

much less to any inappropriate aggregating and sharing of individual Michigan Farmer consumer subscriber information during the four-month period in 2016. Indeed, Plaintiff fails to identify a single data aggregator or appender that may have obtained Plaintiff's information, state how Defendant profited from any such disclosure of Plaintiff's information, or plead if any other data about Plaintiff was obtained by Defendant from third-party sources. This effort to maintain a claim is especially egregious considering the sworn affidavit from Defendant attesting to the lack of any record that Plaintiff's information was disclosed to anyone during the relevant time period. Accordingly, even if the Court concludes that the claims are not time-barred, the case should be dismissed under Rule 12(b)(6).

## II.     FACTUAL BACKGROUND.

Apart from claiming Plaintiff "saw a dramatic uptick of junk mail in his inbox" (FAC, ¶ 10), the FAC does not allege facts regarding Plaintiff's personal experience or personal harm. Critically, even though Plaintiff focuses the relevant time period to April to July 2016, Plaintiff fails to allege the actual dates of his subscription to Michigan Farmer, how he subscribed,[3] or that *his* personal subscription information is or was in the possession of a data list broker or sold to any data list broker or third-party with appended information for profit.

Instead, the FAC speaks in generalities about how the data broker industry works and separately distorts the facts around the business-to-business marketing arm of Defendant's predecessor and makes significant leaps in logic and connecting facts to conclude that Plaintiff's PRI was disclosed without notice to third-parties prior to July 31, 2016. There are no facts in the FAC establishing or even suggesting that Plaintiff's PRI was disclosed to anyone at any time without notice to Plaintiff. Plaintiff states in conclusory fashion that Defendant "rented,

---

[3] Subscriptions through third-party agencies are not covered by the PPPA. *Coulter-Owens v. Time, Inc.*, 695 Fed. Appx. 117, 2017 WL 2731309 (2017).

7

exchanged, and/or otherwise disclosed" its customers' PRI—i.e., names, home addresses, and the titles of publications subscribed to—to third-parties without consent or notice, and that such disclosures violated the PPPA. (FAC, ¶ 1.) But Plaintiff does not provide any facts to suggest that Defendant *actually disclosed* Plaintiff's PRI during the relevant time period (i.e., before July 31, 2016), to whom such disclosure may have been made, or how his information may have been used. Indeed, Plaintiff fails to identify the "junk mail" he received or the sources of such mail.

Despite hundreds of pages of exhibits and multiple pages of generalized allegations, Plaintiff's entire case against Defendant turns on a one-page data card, which is an <u>incomplete snapshot of a third-party webpage</u> representing a data card from *third-party* NextMark, Inc., showing the purported availability of the Michigan Farmer magazine mailing list—one of over *two dozen* other publications listed on that screenshot—through May 19, 2021, several years after the purported relevant time period.[4] (FAC, ¶ 2). Although Plaintiff subscribed to Michigan Farmer magazine before July 31, 2016, Plaintiff claims this unauthenticated third-party data card is evidence of Defendant's unauthorized disclosure of Plaintiff's subscription and demographic information in the statutory period. (FAC, ¶ 17.) What is more egregious, Plaintiff suggests that this third-party website is evidence of *Defendant's* offer to provide renters access to mailing lists, or that Defendant already did provide such access. (*See id*.) Based on this "discovery," and in blatant disregard of Defendant's sworn affidavit attesting otherwise, Plaintiff filed this class action seeking to represent a class of Michigan residents who allegedly had their PRI disclosed to third-parties by Defendant without notice prior to July 31, 2016. (FAC., ¶ 57.)

---

[4] Plaintiff's "screenshot" is incomplete in that it does not show the entire webpage, including the URL, date of the screenshot, and owner of the website. *See* FAC, Ex. 2. A similar "data" card currently available on NextMark's website can be seen here: https://lists.nextmark.com/market?page=order/online/datacard&id=334081&trk=y&aId=1381.

130179288

## III. LEGAL STANDARD.

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If the plaintiff does not "nudge[ ] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). A complaint "must assert sufficient facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it

rests." *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

IV. **ARGUMENT.**

A. **Plaintiff's Claims Are Barred by the Applicable Statute of Limitations.**

The instant action was filed on September 19, 2022. The Complaint includes a request for relief on behalf of the named plaintiff and a putative class in the form of $5,000 in statutory damages for each purported violation. (Compl., ¶ 74.) To be entitled to a statutory damages award pre-amendment, the cause of action must have arisen on or before July 31, 2016, and it must have been filed (at the latest) within 6 years of the date the purported disclosure occurred.[5] *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp.3d 666, 675 (E.D. Mich. 2022). Here, Plaintiff's claims are barred by the statute of limitations. Six years from the last day when the claim could have accrued under the statute (July 30, 2016), passed on July 31, 2022. This lawsuit was not filed until September 19, 2022, well after the expiration of the statute of limitations.

Plaintiff contends that he is entitled to certain relief from the limitations period based on the Governor's Executive Order No. 2020-58 ("Executive Order") and Michigan Supreme Court's Administrative Orders in response to the COVID-19 pandemic. (*See* FAC., ¶ 1 n.1.) These orders purport to toll statutory limitations periods under Michigan law for what ultimately amounts to a period of 101 days between March 10, 2020, and June 20, 2020. *See Browning v. Buko*, 2022 WL 4117478, at *1 (Mich. Sept. 9, 2022) (Viviano, J., dissenting). This would mean that the limitations period for Plaintiff's claim is extended to November 9, 2022. Plaintiff, however, is wrong.

---

[5] The PPPA was amended effective July 31, 2016, to eliminate any available recovery for statutory damages. *See* MCL § 445.1715(2). Defendant is aware that this Court has concluded that the six-year statute of limitations applies. *See Krassick v. Archaeological Ins. of Am.*, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022) (Jarbou, J.). Without conceding this issue, as set forth herein, the six-year statute of limitations has also expired, and the case should be dismissed.

10

As recognized by Plaintiff, the Executive Order applies to "all deadlines applicable to the *commencement* of all civil and probate actions and proceedings" and "the *commencement* of all civil and probate case types." (Compl., ¶1 n.1) (citing Mich. Supreme Court Administrative Order 2020-3, Mich. Executive Order No. 2020-58) (emphasis added). The Executive Order extended by 101 days the time for *filing* a claim; it certainly did not (and did not purport to) extend the cause of action for statutory damages. Indeed, an executive order could not override or extend the legislature's termination of causes of action for statutory damages.[6] Thus, on its face, the Executive Order applies only to the commencement of claims rather than extension of certain remedies found in causes of action. Even if Plaintiff is correct that his deadline to file a claim under the PPPA was tolled for 101 days, the remedy of statutory damages was not preserved as part of that tolling.

Nor do the Court's Administrative Orders save Plaintiff's claim. In *Browning*, the Michigan Supreme Court was asked to review the propriety of the tolling order but declined to take up the issue. *Id*. However, in a dissenting opinion, Michigan Supreme Court Justice David Viviano, joined by Justice Brian Zahra, acknowledged that the defendants' argument that these "administrative orders improperly exercised legislative power" was a "strong argument that merits our attention." *Id*. at *2. Indeed, it appears the Michigan Supreme Court lacks authority to issue "court rules that prevail over statutes." *Id*. It "may only do so in matters dealing with practice and procedure in the courts and not in matters involving substantive law," and the Court has previously held that "[s]tatutes regarding periods of limitations are substantive in nature." *Id*. (citing *Gladych v. New Family Homes, Inc*., 468 Mich. 594, 600 (2003)). Thus, the Court concluded in the past,

---

[6] This conclusion is also consistent with the legislative history of the 2016 Amendment, which provides, in pertinent part: "The amendatory act is curative and intended to clarify that the prohibitions on disclosing information . . . and that a civil action for a violation of those prohibitions may only be brought by a customer who has suffered actual damages as a result of the violation." S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016).

11

"to the extent [a statute] enacts additional requirements regarding the tolling of the statute of limitations, the statute would supersede the court rule." *Id*. The Michigan Supreme Court Administrative Orders, therefore, cannot extend the statutory limitations period.

Here, the lawsuit was filed on September 19, 2022, more than six years and 50 days after the amendments to the PPPA took effect. Even if Plaintiff could argue that his claim was tolled during the pendency of the previously filed class action against Defendant by DelValle on June 21, 2022 (*see* n.1, *supra*), Plaintiff waited over thirty days after it was dismissed to file his claim. Accordingly, the previously-filed case does not help Plaintiff.[7]

Thus, the Court should find that regardless of what limitations period is applied, it expired before this case was filed and this case should be dismissed, with prejudice.

### B. The FAC Fails to State a Claim Under Rule 12(b)(6).

Even if Plaintiff's claim is not time-barred, it should be dismissed because the FAC presents no facts to plausibly suggest that Defendant unlawfully disclosed Plaintiff's PRI to third-parties in violation of the PPPA. To state a claim under the prior version of the PPPA, the plaintiff must plead facts indicating that (i) the defendant knowingly disclosed personally identifying reading information about the plaintiff (ii) to any person (iii) without notice or permission. M.C.L. §§ 445.1712, 445.1713 (1989) (barring "knowing" disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer" except "for the exclusive purpose of marketing goods and services directly to the consumer" with "written notice" and opportunity to opt out). Plaintiff's

---

[7] *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018) ("We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action. The 'efficiency and economy of litigation' that support tolling of individual claims . . . do not support maintenance of untimely successive class actions; any additional class filings should be made early on, soon after the commencement of the first action seeking class certification.") (quoting *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974)).

claim is based on the conclusory allegation that Defendant disclosed his PRI to "data aggregators, data appenders, data cooperatives, and list brokers . . . during the relevant pre-July 31, 2016 time period" and that led to the sale of his information to advertisers, political organizations and others (FAC., ¶ 1.) Other than passing reference to unidentified junk mail, Plaintiff does not allege <u>any</u> supporting facts for this conclusory statement. When read closely in connection with the exhibits to the FAC, the Court must conclude that Plaintiff has not alleged adequate facts for the Court to infer that it is plausible that Defendant is liable for the alleged misconduct as to Plaintiff. *See Ashcroft*, 556 U.S. at 678.

Plaintiff does not identify a single third-party who received Plaintiff's PRI, let alone how or when that disclosure occurred, including whether the disclosure occurred between April and July 2016. Nor does Plaintiff allege who the "junk mail" advertisers were or are, or what information they obtained from Defendant and data appenders that was the *de facto* cause of any harm to him. Rather, Plaintiff's claim is based on conclusory allegations about disclosure (FAC, ¶¶ 1-2, 11, 13-14, 17, 49-56, 68-81), along with more than 25 paragraphs addressing the history of the PPPA, comparable federal law, and the "private information market" industry in general. (*Id.*, ¶¶ 22-48). Plaintiff then attempts to incorporate "documented evidence" consisting of third-party web content to create a *suspicion* that *maybe* Plaintiff's PRI was indeed disclosed by Defendant to third-parties who then aggregated the information and eventually sold it to other advertisers resulting in junk mail to him.

Importantly, Plaintiff's so-called "documented evidence" of Defendant's PPPA violations fails to plausibly support the conclusion that Defendant violated the PPPA between April 15, 2016, and July 31, 2016. First, Plaintiff relies on an unauthenticated *third-party* list broker's (NextMark) online data card dated **May 19, 2021**. (*See* FAC, Ex. A; Motion, Ex. 1.) The data card shows only

13

that sometime after May 19, 2021 (almost five years after any alleged statutory violation), a third-party (not Defendant) made available certain subscriber information of over 24 publications, including Michigan Farmer. (*Id*.) The data card does not identify from where the information is or would be obtained, what information it contains from any specific publication, or, most importantly, that any Michigan Farmer subscriber information from before January 31, 2016, is contained therein.

Indeed, Judge Stephen Murphy of the Eastern District of Michigan recently dismissed a PPPA claim that attempted to rely on a NextMark data card. *See Nashel and Robinson v. The New York Times Company*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022). Just like Plaintiff, the *Nashel* plaintiffs argued that an obsolete NextMark "mailing list" showing customer "counts" through June 30, 2007, supported an inference that the defendant violated the PPPA during the relevant pre-July 31, 2016, period. *Id.*, at *1. The court held that these allegations "fail to clear the plausibility threshold" because the data cards "were posted years before the relevant period," Plaintiffs' only "cure for the timing issue" was a "legal-conclusion inference" that made their allegations "merely *possible* rather than plausible," and the "data cards . . . fail to support a crucial element of Plaintiffs' alleged action: that *Defendant* engaged in the business of selling written material to disclose information personally identifying the customer." *Id*., at *4-5 (citation omitted). The *Nashel* court was faced with the exact same PPPA claim as this Court is here, supported by a comparably outdated NextMark "mailing list" purporting to "count" individuals who made purchases years outside the period in which the PPPA claim accrued, and concluded that those allegations did not plausibly state a claim for relief. Judge Murphy refused to make what he called "a large inferential leap" and dismissed the complaint. *Id*. This case is substantially

14

similar to the *Nashel* case—in fact, *Nashel* was one of the many cookie-cutter cases brought by the same attorneys who brought this case—and the result should be the same.

In yet another action alleging claims under the PPPA, the court dismissed a similar complaint against Apple for failure to plead plausible facts. *See Wheaton v. Apple Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019). The court dismissed the plaintiffs' PPPA claim because "[t]he complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the data cards identified in the complaint "d[id] not show that Apple disclosed customers' personal listening information." *Id*. at *5. Again, the results here should be the same.

Second, Plaintiff attaches two PR Newswire web articles from 2014 and 2015 regarding the launch of Defendant's predecessor's SmartReach business-to-business marketing arm to create the impression that Defendant was indeed sharing consumer personal subscriber information to third-parties during the four-month window in 2016 without the requisite notice, **yet the news articles say no such thing**. Not only are the contents of the articles unauthenticated hearsay, but when read in full, it is obvious that the articles say only that the SmartReach division was a marketing division within Penton Media (Defendant's predecessor) that provided *business-to-business* marketing services to its clients from its vast database of "*business* records." (*See* FAC, Ex. C ("The database has 16 million business-to-business records, representing 7.8 million unique *businesses*"; "Penton has been aggressively investing in building its deep self-reported, rich sets of *business data* for digital marketing."); Ex. D ("Penton SmartReach Audience Extension, which for the first time will provide *business-to-business* marketers with the ability to better target and convert new customers") (emphasis added).) The articles say nothing about whether the SmartReach division disclosed ***consumer*** subscriber information, much less identifying

15

information (indeed, it did not). Next, the articles do not state that any subscriber information would be disclosed to third-parties; instead, they specifically state that Penton Media would be keeping all data in-house, and would be doing the marketing on behalf of its clients, which suggests that no information would be disclosed. (*See id*. Ex. C (stating that the division would be "managing its data in-house instead of outsourcing its subscriber and data information to list vendors"); Ex. D (referring to the marketing services as services delivered by Penton Media itself—"services we deliver"—and stating "[w]e served ads to these people through our sites as well as through our Audience Extension program.").) Thus, contrary to Plaintiff's conclusory allegations from egregiously distorted and incomplete quotes, the articles do not reasonably suggest that Penton Media was either transmitting subscriber's PRI to data appenders or "actively selling, renting, exchanging, and otherwise disclosing its entire database of its subscribers' [PRI] … to numerous third parties" in 2016. (FAC, ¶¶ 6-7.)

Third, Plaintiff attaches what he believes is Penton's online privacy policy from July 10, 2016. (*See* FAC, Ex. G.) Just like with the PR Newswire articles, Plaintiff grossly misreads the Privacy Policy to allege that "Penton admitted in its Privacy Policy that it discloses the [PRI] of all of its subscribers to its various publications, which included *Michigan Farmer* magazine, to data appenders, data aggregators, and other third parties." (FAC, ¶ 8.) But no such statement is contained in the Privacy Policy. Indeed, the quote that Plaintiff references states only that Penton may *receive* (not disclose) information from other sources "with authorization," and that it may "make contact data, including email addresses, available in *certain of our subscription-only databases*" and then immediately provides an email address for opting out. (*See* FAC, Ex. G [PageID.638].) The Privacy Policy does not suggest that Plaintiff's PRI related to Michigan

16

Farmer, or any other putative class member's PRI, likely was disclosed to anyone, much less to data appenders or aggregators, during the relevant time period.

Because the FAC does not allege facts that facially support the conclusion that Penton or Defendant plausibly violated the PPPA with respect to the named Plaintiff (or any putative class member), Plaintiff has not met the requirements for pleading a claim under the statute. *See, e.g., Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) ("[I]t is not enough for plaintiffs to argue that the complaint, because it is silent…, must be read in the light most favorable to them and construed as not precluding the possibility that they will be able to prove facts establishing their entitlement to relief… A complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient.") The FAC falls short of the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557. Thus, Plaintiff's claims fail to meet the pleading standards of Rule 12(b)(6) and should be dismissed.

## V. CONCLUSION.

For the foregoing reasons, and because it is obvious that Plaintiff is operating only on conjecture at this point, the FAC should be dismissed with prejudice.

DATED: January 10, 2023

Respectfully submitted,

BLANK ROME LLP

By: */s/ Ana Tagvoryan*
   Ana Tagvoryan
   ana.tagvoryan@blankrome.com
   Harrison Brown
   harrison.brown@blankrome.com
   2029 Century Park East, 6th Floor
   Los Angeles, CA 90067
   Tel.: 424.239.3400
   Fax: 424.239.3434
Attorneys for Defendant
INFORMA MEDIA, INC.

# CERTIFICATE OF COMPLIANCE

The Memorandum in Support of Defendant Informa Media, Inc.'s Motion to Dismiss complies with the word count limitation of W.D. Mich. LCivR 7.2(b)(i) because the brief contains 4,246 words, as defined by W.D. Mich. LCivR 7.2(b)(i). The word count was generated using Microsoft Word 365.

DATED: January 10, 2023

Respectfully submitted,

BLANK ROME LLP

By: */s/ Ana Tagvoryan*
    Ana Tagvoryan
    ana.tagvoryan@blankrome.com
    Harrison Brown
    harrison.brown@blankrome.com
    2029 Century Park East, 6th Floor
    Los Angeles, CA 90067
    Tel.: 424.239.3400
    Fax: 424.239.3434
Attorneys for Defendant
INFORMA MEDIA, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys or parties of record.

By: */s/ Ana Tagvoryan*
      Ana Tagvoryan