# Exhibit D

Emily Johnson Henn (Bar No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

Simon Frankel (Bar No. 171552)
Ethan Forrest (Bar No. 286109)
Sarah Guerrero (Bar No. 322319)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com; eforrest@cov.com; sguerrero@cov.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEIGH WHEATON; JILL PAUL; and TREVOR PAUL, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>APPLE INC.,<br><br>     Defendant. | Civil Case No.: 3:19-cv-02883-WHA<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date: October 10, 2019<br>Time: 8:00 a.m.<br>Judge: Hon. William H. Alsup<br>Courtroom: 12 |

# TABLE OF CONTENTS

I.   Plaintiffs Fail to Plausibly Allege That Apple Disclosed Their Names and Addresses to Third-Party Data Brokers or Similar Entities. .................................................................... 2

    A.   The Complaint Contains Only Conclusory Statements of Liability, Which Cannot State a Claim. ...................................................................................................... 2

    B.   Plaintiffs Do Not Plausibly Allege That Any Data Broker Possesses Any Names, Addresses, or Music-Listening Information About Apple Users. ......................... 4

    C.   The Complaint Does Not Plausibly Assert That the Brokers' Information Came from Apple. ....................................................................................................... 6

II.  Plaintiffs Fail to Identify Any Plausible Facts Supporting Their Claim That Apple Disclosed Their Names and Addresses to Third-Party Developers. ................................... 8

    A.   Plaintiffs Plausibly Allege No Facts Showing That Apple Disclosed Names or Addresses to Developers Through Metadata. ......................................................... 8

    B.   Plaintiffs Allege No Facts to Plausibly Demonstrate That Apple Disclosed Names or Addresses to Developers Through Tokens. ........................................................ 9

    C.   Plaintiffs Allege No Facts Plausibly Showing That Apple Disclosed Names or Addresses to Developers Through Gifting. ........................................................ 11

III. The Court Should Dismiss Plaintiffs' Michigan Law Claim for the Independent Reason that Plaintiffs Have Not Alleged Actual Damages. ......................................................... 11

    A.   The Amended MIPPPA Governs Plaintiffs' Claims. ........................................... 11

    B.   Plaintiffs' Damages Theories Are Deficient. ...................................................... 13

IV.  Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law. ...................................... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Systems, Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........................................................................14

*In re Anthem, Inc. Data Breach Litig.*,
2016 WL 3029783 (N.D. Cal. May 27, 2016) .............................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................2, 6, 7, 8

*Assoc. des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
729 F.3d 937 (9th Cir. 2013) ......................................................................................13

*Ballog v. Knight Newspapers, Inc.*,
381 Mich. 527 (1969) ..................................................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................7, 8

*Boelter v. Adv. Magazine Publ'rs, Inc.*,
210 F. Supp. 3d 579, 584 (S.D.N.Y. 2016).................................................................7

*Boelter v. Hearst Comm'cns, Inc.*,
192 F. Supp. 3d 427, 435–36 (S.D.N.Y. 2016).....................................................7, 14

*Broemer v. United States*,
2003 WL 27382055 (C.D. Cal. Sept. 30, 2003) ..........................................................3

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) ......................................................................................14

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) .....................................................................................7

*In re Certified Questions from U.S. Ct. of Appeals for the Sixth Circuit*,
416 Mich. 558 (1982) ..................................................................................................13

*DeHoog v. Anheuser-Busch InBev SA/NV*,
899 F.3d 758 (9th Cir. 2018)................................................................................4, 5, 6

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) .......................................................................8

*Eichenberger v. ESPN*,
    876 F.3d 979 (9th Cir. 2017) .................................................................................10

*In re Facebook Privacy Litig.*,
    572 F. App'x 494 (9th Cir. 2014) ...........................................................................14

*Halaburda v. Bauer Pub. Co., LP*,
    2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ......................................................12

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
    2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) .........................................................14

*Herzer v. Redstone*,
    2018 WL 5094933 (C.D. Cal. Jul. 10, 2018) ...........................................................3

*Hill v. GM Acceptance Corp.*,
    207 Mich. App. 504 (1994)....................................................................................13

*Horton v. GameStop Corp.*,
    380 F. Supp. 3d 679, 682 (W.D. Mich. 2018) ...................................................7, 13

*In re Hulu Privacy Litig.*,
    2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ......................................................10

*Knudson v. Sprint Comm'cns Co.*,
    2016 WL 4548924 .........................................................................................4, 5, 6

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) ..................................................................................15

*Lewis v. Casey*,
    518 U.S. 343 (1996)................................................................................................8

*Low v. LinkedIn Corp.*,
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) (Koh, J.) ...................................2, 3, 9

*Moeller v. Am. Media, Inc.*,
    235 F. Supp. 3d 868, 870–71 (E.D. Mich. 2017)...................................................7

*Mortg. Elec. Reg. Sys., Inc. v. Pickrell*,
    271 Mich. App. 119 (2006)....................................................................................12

*People v. Sheeks*,
    244 Mich. App. 584 (2001)....................................................................................12

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623, 626–27 (E.D. Mich. 2017)...................................................7

*Pisciotta v. Old Nat. Bancorp*,
    499 F.3d 629 (7th Cir. 2007) .................................................................................14

*Raden v. Martha Stewart Living Omnimedia, Inc.*,
   2017 WL 3085371 (E.D. Mich. July 20, 2017) ...................................................................12

*Ruiz v. Gap*,
   622 F. Supp. 2d 908 (N.D. Cal. 2009) ...............................................................................14

*Ruppel v. Consumers Union of U.S., Inc.*,
   2017 WL 3085365 (S.D.N.Y. June 12, 2017) .......................................................................7

*Sams v. Yahoo!, Inc.*,
   2011 WL 1884633 (N.D. Cal. May 18, 2011) (Fogel, J.).....................................................3, 9

*Seaton v. Wayne Cty. Prosecutor*,
   233 Mich. App. 313 (Mich. Ct. App. 1998) .......................................................................12

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014) .......................................................................3

*In re Vizio, Inc. Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204, 1225 (C.D. Cal. 2017) ...................................................................10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................................................................14

**Statutes**

Mich. Comp. Laws 445.1712........................................................................................... *passim*

R.I. Gen. Laws § 11-18-32(a) ........................................................................................1, 9, 10

18 U.S.C. § 2710 ...................................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 12 ......................................................................................1

2016 Mich. Legis. Serv. P.A. 92.................................................................................11, 12

Plaintiffs' Opposition confirms why their claims should be dismissed. Notably, the Opposition does not challenge the key legal principles Apple raised in its motion to dismiss. Dkt. 37. Plaintiffs do not dispute that to state a claim under the relevant statutes, they must plausibly allege that Apple disclosed information that "would identify the names and addresses" of Plaintiffs, plus "the titles or nature" of music they listened to or bought, R.I. Gen. Laws § 11-18-32(a) ("RIVRPA"), or that "personally identifies the customer as having leased, rented, or borrowed [music from Apple]," Mich. Comp. Laws 445.1712(1) ("MIPPPA"). Nor do Plaintiffs dispute that for their allegations to be plausible, they must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Dkt. 50 at 9–10 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs also do not dispute that they fail to allege facts establishing that Apple disclosed Plaintiffs' names and addresses coupled with information about music they bought or listened to, as required for a violation of the above state statutes.

Plaintiffs' Opposition rests on a fundamental misunderstanding of what they must plead to escape dismissal under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6). Plaintiffs repeatedly claim to have sufficiently alleged Apple's disclosure of the two key categories of data. Dkt. 50 at 10–11, 13–14. But they cite only the Complaint's flat and conclusory recitals that Apple disclosed actionable information without offering *any* plausible factual support for that allegation. *Id.* These threadbare allegations, without facts supporting the inferences Plaintiffs ask the Court to draw, are insufficient under the laws that Plaintiffs agree govern this case. Indeed, courts have repeatedly dismissed such claims with more factual detail than Plaintiffs offer here. And it is no response to contend, as Plaintiffs do, that they provide other information in exhibits to the Complaint, when those exhibits add no plausible detail to the claim that Apple violated the statutes. *See* Dkt. 50 at 10–15.

The Court should dismiss the Complaint for these basic pleading failures alone. Even aside from these failures, the MIPPPA claim should be dismissed on the independent ground that the Complaint does not allege the actual damages required by the statute, and the unjust enrichment claim should be dismissed because it is improperly pled and cannot survive without the statutory claims.

## I. Plaintiffs Fail to Plausibly Allege That Apple Disclosed Their Names and Addresses to Third-Party Data Brokers or Similar Entities.

### A. The Complaint Contains Only Conclusory Statements of Liability, Which Cannot State a Claim.

For their claim that they have adequately alleged that Apple disclosed names and addresses plus music-listening information to third-party data brokers, Plaintiffs repeatedly cite to allegations similar to this one: "Apple 'sold, rented, transmitted and/or otherwise disclosed Plaintiff[s'] Personal Listening Information [defined as full names, home addresses, and titles and/or genres of music purchased via the iTunes store] . . . to numerous third parties, including data miners, aggregators and analytics companies . . . ." Dkt. 50 at 11 (quoting and altering Dkt. 1 ¶ 3, citing Dkt. 1 ¶¶ 3, 6, 22, 46, 47, 73, 79, 85, 131).

Yet this language, like the other paragraphs Plaintiffs cite, provides no supporting detail about Plaintiffs' critical accusation. Repeatedly stating, in a conclusory fashion, that Apple disclosed names and addresses with listening information to third parties, without any supporting allegations of fact, is no more than saying repeatedly, "Apple violated the statutes." Such allegations are not sufficient to state a claim under Rule 12 because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to carry Plaintiffs' pleading burden. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

As explained in Apple's motion, courts have repeatedly dismissed bare allegations of unlawful disclosure unaccompanied by facts sufficient to make the allegations plausible. Dkt. 37 at 7–8 (citing cases). Plaintiffs argue, "In none of the cases Apple cites did the plaintiffs plead the type of information disclosed, how it was disclosed, and to whom it was disclosed." Dkt. 50 at 13. Plaintiffs are wrong. In each case, the plaintiffs described—providing more detail than Plaintiffs here—how the defendant could have impermissibly disclosed (or intercepted) the plaintiffs' information, and then asserted (without further supporting facts) that the defendants did so. Even with this additional detail—absent here—the courts held the pleadings insufficient.

For example, in *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *6 (N.D. Cal. Nov. 11, 2011) (Koh, J.), the plaintiff alleged that LinkedIn assigned him and other users unique IDs, which LinkedIn then disclosed to third parties, enabling them to append other data (such as browser histories) to the

unique ID, for marketing purposes. *Id.* at *1–2. But the *Low* plaintiff never provided any examples of what information of his was actually disclosed to third parties on specific occasions, or how any such information was actually linked to other data (or otherwise misused). *Id.* at *3–6. The court dismissed the claims that LinkedIn used this method to disclose the plaintiff's and putative class' information to various third parties: "the Plaintiff has failed to put forth a coherent theory of how his personal information was disclosed or transferred to third parties, and how it has harmed him." *Id.* at *6.

Similarly, in *Sams v. Yahoo!, Inc.*, 2011 WL 1884633, at *7 (N.D. Cal. May 18, 2011) (Fogel, J.), the plaintiff alleged numerous, detailed facts about how Yahoo! received several subpoenas requiring production of information that would identify the user associated with a certain email account, including associated IP addresses and information about when the person logged in and out. *See id.* at *6. The plaintiff also asserted that in complying with these subpoenas, Yahoo! disclosed the plaintiff's email content, contrary to law. *Id.* But like the plaintiff in *Low* and Plaintiffs here, the *Sams* plaintiff— despite pleading extensive facts about the defendant's capabilities, and about what other information was allegedly at issue—provided "no actual facts tending to show that Yahoo! disclosed any information other than [information irrelevant to the plaintiff's claim]." *Id.* at *7. The court dismissed the claim. *Id.*

As a final example, in *Herzer v. Redstone*, 2018 WL 5094933, at *3 (C.D. Cal. Jul. 10, 2018), the plaintiff alleged the type of information disclosed (*i.e.*, "video and audio recordings of [plaintiff's] private conversations", *id.* at *7), how it was disclosed ("email, text message and . . . other means", *id.*) and to whom (the defendants, to each other). But the Court dismissed the plaintiff's claim where "necessary facts about whether communications were, in fact, intercepted" were lacking. *Id.* at *7.[1]

---

[1] The other cases cited in Apple's motion confirm that Plaintiffs' conclusory allegations of disclosure here, without more, are insufficient. *E.g.*, *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1031 (N.D. Cal. 2014) (dismissing claim because defendant vaguely alleged unlawful disclosure but "provide[d] no facts to support this otherwise conclusory assertion"); *see also, e.g.*, *Broemer v. United States*, 2003 WL 27382055, at *4 (C.D. Cal. Sept. 30, 2003) ("plaintiff failed to allege that defendant disclosed private information partly because plaintiff failed to adequately set forth "factual details surrounding the alleged disclosure").

Plaintiffs also try to distinguish these numerous decisions by asserting that the complaints at issue did not include the exhibits that Plaintiffs have offered here, purportedly showing information in the hands of third parties. *See* Dkt. 50 at 13. Regardless of whether exhibits were attached or not, the question is

Because the Complaint fails to allege more than conclusory statements of liability as to third-party data brokers, Plaintiffs' claims should be dismissed.

### B. Plaintiffs Do Not Plausibly Allege That Any Data Broker Possesses Any Names, Addresses, or Music-Listening Information About Apple Users.

Other than repeating their conclusory allegations, the *only* "facts" that Plaintiffs offer to support the assertion that Apple disclosed Plaintiffs' names and addresses plus music-listening information to third-party data brokers or similar entities are Exhibits C and D to their Complaint, which Plaintiffs claim reflect third-party data brokers offering relevant information about Apple users. Dkt. 50 at 10–13 (citing Dkts. 1-3, 1-4). As set out in Apple's motion and further explained below, these two documents do not show what Plaintiffs claim; in fact, they do not establish *any* actionable conduct by Apple. Plaintiffs' reliance on these documents requires numerous steps of impermissible inference and speculation that cannot support a plausible claim. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763–65 (9th Cir. 2018). And when a complaint's exhibits include no facts sufficient to raise a plaintiff's belief "beyond mere speculation," courts reject allegations based on those exhibits. *Knudson v. Sprint Comm'cns Co.*, 2016 WL 4548924, at *9 n.14, *14 n.20 (N.D. Cal. Sept. 1, 2016) (Breyer, J.).

*Exhibit C—CDM.* Plaintiffs assert that Exhibit C is a "list offering from [Carney Direct Marketing ("CDM")] entitled 'iTunes and Pandora Music Purchasers.'" Dkt. 50 at 11 (citing Dkt. 1-3). Plaintiffs claim this document shows CDM is offering for sale information on the music listening history of iTunes and Pandora users; that the document shows CDM is offering names and addresses of Apple customers; and that this must include information for users from Rhode Island and Michigan. Dkt. 50 at 11 (citing Dkt. 1-3). Exhibit C itself provides no plausible support for these conjectures.

*First*, Plaintiffs never explain how anything in Exhibit C could be plausibly read to refer to CDM possessing or making available information about anyone's music listening information. *See* Dkt. 50 at 11. The document itself makes no reference to users' music-listening information. Dkt. 1-3. This is a profound failure because, as Plaintiffs acknowledge, disclosure of an individual's music listening information is a key requirement under both state statutes. Dkt. 50 at 10.

---

whether the contents of such exhibits make the allegations of unlawful disclosure plausible, not just possible. As detailed in Section 1(B), Plaintiffs' exhibits do not help them clear this hurdle.

*Second*, the envelope icon and the word "mail" in no way suggest, let alone show, CDM is offering the names and addresses (or information identifying the names and addresses) of individual iTunes users.  Plaintiffs claim the "mail" icon in Exhibit C must mean CDM offers names and addresses, but this is pure conjecture.  The "mail" icon may be a way to contact CDM by clicking on it (assuming the document is in fact from CDM), or it may be a click-through to obtain more information on the "List Type" of "Consumer."  One just can't tell what it means—and certainly it does not plausibly suggest this page shows an offer of names and addresses of individuals.  Even putting aside Plaintiffs' improper reliance on matters outside the Complaint (the USPS website), it is gross speculation that the document reflects information within the scope of these statutes.

*Third*, the claim that Exhibit C on its face shows CDM has and is offering information on individuals in Rhode Island and Michigan is again speculation.  The document provides no guidance on how to interpret the meaning or scope of this general reference to "GEOGRAPHY/USA."  *Id.*

At most, Exhibit C appears to describe certain information about iTunes and Pandora "Purchasers" in a variety of categories, *none of which implicate the Rhode Island or Michigan statutes*.  The document provides no basis for the several inferential leaps Plaintiffs ask the Court to make.  The Court should reject Plaintiffs' argument as a "classic speculative conclusion."  *DeHoog*, 899 F.3d at 765; *see Knudson*, 2016 WL 4548924, at *9 n.14, *14 n.20.

**Exhibit D—Purportedly SRDS.**  Plaintiffs contend Exhibit D is from "SRDS, another list brokerage company, offer[ing] for sale the same or similar list as the one sold by CDM."  Dkt. 50 at 11 (quoting Dkt. 1 ¶ 50, citing Dkt. 1-4).  As explained in Apple's motion, nothing in Exhibit D even remotely suggests that it concerns Apple users or services *at all*, as the document does not mention Apple or iTunes in any way.  Dkt. 37 at 3, 9.  Plaintiffs' Opposition is notably silent on this point.  On its face, this document could be about any group of people—again, one just can't tell.  Dkt. 1-4.

Equally significant, there is nothing in the document suggesting (let alone showing) that it reflects an offer to sell information identifying individuals' names and addresses coupled with their music listening history.  *Id.*  As to names and addresses, Plaintiffs again cite to a URL that is nowhere referenced or incorporated in the Complaint, in an effort to shed light on Exhibit D's vague statement, "Net name is allowed" (under the word "Restrictions").  Dkt. 50 at 11 (citing Dkt. 1-4).  The Court need

not consider a URL that is outside the pleadings, but, in any event, the meaning of "Net name allowed" offered by Plaintiffs only includes *names* and does not include addresses, which they concede are also required here.  And even if the document could plausibly be read to reference information identifying names and addresses of individuals, there is absolutely no basis for concluding the document has anything to do with individuals' music listening history.  There is a passing reference to "buying behavior," but, again, no explanation of what that means.  Particularly given that the document in no way suggests that it concerns Apple or iTunes users, it is speculative to suggest that "buying behavior" plausibly could, let alone would, refer to music listening information.  *DeHoog*, 899 F.3d at 765; *Knudson*, 2016 WL 4548924, at *9 n.14, *14 n.20.

### C. The Complaint Does Not Plausibly Assert That the Brokers' Information Came from Apple.

Even if Exhibits C and D concerned brokers possessing the relevant information about Plaintiffs required by the statutes, nothing in either exhibit suggests that *Apple* disclosed any information to CDM or SRDS, or that Apple was even the source of any of the information.

To state the obvious, neither exhibit states that Apple provided any information to CDM or SRDS, and Plaintiffs do not argue otherwise.  Dkts. 1-3, 1-4.  Plaintiffs contend instead that the Court can infer that only Apple could be the source of "such detailed personal and purchase-related information as the purchasers' full names and addresses, and the specific genres of music they bought from Apple."  Dkt. 50 at 12.  But, as just explained, the documents *do not* show any such detailed information.  Plaintiffs' argument boils down to their contention that *if* there are detailed facts about Apple's customers in these exhibits, those facts must have been supplied by Apple.  But the problem is, again, that these exhibits undisputedly do *not* contain such detailed facts, and assuming otherwise demands making leaps far beyond what the facts can bear.  Neither exhibit supports Plaintiffs' speculative argument, and the Court should reject it.  *Iqbal*, 556 U.S. at 678 (plaintiffs must at least allege sufficient facts for court to draw reasonable inference as to defendant's liability); *DeHoog*, 899 F.3d at 765 ("This allegation is a classic speculative conclusion.").

In asking the Court to make the purely speculative leap that the information in Exhibits C and D plausibly could have come from Apple, Plaintiffs try to muddy the waters by citing decisions in several

cases their counsel litigated, including *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018). *See* Dkt. 50 at 12. But all these MIPPPA cases rested on allegations—buttressed by exhibits that clearly supported the pleadings, unlike here—of third parties selling the mailing lists of various magazines' subscribers. 380 F. Supp. 3d at 681–82.[2] Those lists undisputedly included both types of information whose disclosure the MIPPPA prohibits: (a) names and addresses, without which magazines could not be delivered to subscribers, coupled with (b) information concerning the purchase of reading materials, which is inherent in the title of a magazine to which one subscribes.[3] In contrast, Exhibits C and D do not purport to disclose anything about (a) anyone's names or addresses, or (b) music people bought, listened to, borrowed, or even just liked. So the information referenced in the exhibits here does not reflect the categories of information addressed in the statutes—and is also not information that would uniquely come from the defendant (as actual lists of the names of who subscribes to a magazine plus their delivery addresses would likely come from the magazine publisher). *See* Dkt. 50 at 12. Following Plaintiffs' inferences heaps speculation on conjecture on top of guesswork.[4]

---

[2] *See Boelter v. Hearst Comm'cns, Inc.*, 192 F. Supp. 3d 427, 435–36 (S.D.N.Y. 2016); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 626–27 (E.D. Mich. 2017); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 870–71 (E.D. Mich. 2017); *Boelter v. Adv. Magazine Publ'rs, Inc.*, 210 F. Supp. 3d 579, 584 (S.D.N.Y. 2016); *Ruppel v. Consumers Union of U.S., Inc.*, 2017 WL 3085365, at *1 (S.D.N.Y. June 12, 2017).

[3] *Id.* These cases were all brought under the MIPPPA (not the RIVRPA), but for purposes of this motion, there is no material difference between the statutes as to these two general categories.

[4] Plaintiffs' inferential leaps also ignore the fact that there are numerous other possible sources for the information actually contained in Exhibits C and D. Information at this high level of generality could come from, for example, independent consumer marketing surveys, internet search capabilities, or other sources. Under *Iqbal* and *Twombly*, Plaintiffs cannot meet their pleading burden by speculating that the information came from Apple. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*.") (citations omitted).

**II.  Plaintiffs Fail to Identify Any Plausible Facts Supporting Their Claim That Apple Disclosed Their Names and Addresses to Third-Party Developers.**

Plaintiffs also allege no facts supporting their claims that Apple disclosed their information to third-party software developers via any of the three methods they outline in their Complaint: (i) metadata access, (ii) tokens, or (iii) iTunes' "gifting" functionality.

As a threshold point on all of these issues, Plaintiffs contend that it is irrelevant for Apple to state that "no Plaintiff asserts that his or her data was ever accessed by any third-party developer," because the statutes refer to "disclosure" instead of "access." Dkt. 50 at 14. But this misses the point. Beyond the conclusory allegation that Apple disclosed data to third-party mobile application developers (Dkt. 50 at 13–14, quoting Dkt. 1 ¶¶ 73, 79, 85), Plaintiffs provide no plausible supporting facts. They never connect (a) their descriptions of what metadata Apple purportedly makes available under certain circumstances to (b) any sufficiently pled allegations of Apple disclosing names, addresses, or other actionable information to any specific developers. As a result, Plaintiffs lack standing to bring any claims, and fail to adequately plead these claims in particular. *See Lewis v. Casey*, 518 U.S. 343, 347 (1996) ("named plaintiffs who represent a class must allege and show that they personally have been injured," as opposed to unidentified other people); *see also, e.g.*, *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing class claims where plaintiffs did not allege that they, as opposed to unidentified other people, were harmed).

That point aside, the Opposition identifies no facts anywhere in the Complaint or exhibits supporting Plaintiffs' allegations about metadata access, tokens, or gifting.

**A.  Plaintiffs Plausibly Allege No Facts Showing That Apple Disclosed Names or Addresses to Developers Through Metadata.**

In response to Apple's argument that Plaintiffs fail to allege facts to support their claim that developers could access Plaintiffs' names or addresses through metadata, Plaintiffs cite only their conclusory statement to this effect. Dkt. 50 at 14 (citing Dkt. 1 ¶ 57). This statement, without more, is insufficient to support Plaintiffs' claims. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Perhaps understanding this, Plaintiffs state without further explanation, "That allegation is supported by Exhibits F, G, and H to the Complaint." Dkt. 50 at 14. But these exhibits never refer to

Apple making available to developers any user's name or address.  They cite only music metadata such as song and album title, album name, and so forth.  *See* Dkts. 1-6 (Ex. F), 1-7 (Ex. G), 1-8 (Ex. H).  The Complaint again alleges no facts to permit any inference that Apple discloses Plaintiffs' names or addresses to third-party developers through metadata.  *E.g.*, *Sams*, 2011 WL 1884633, at *7 (dismissing similar allegations); *Low*, 2011 WL 5509848, at *6 (same).

Separately, Plaintiffs never address and do not dispute Apple's point that it is insufficient to state a claim for Plaintiffs to allege (without more) that iTunes metadata "is linked to data that identifies the individuals who purchased the music reflected in the metadata and/or the specific devices these individuals used to make such purchases."  Dkt. 37 at 11 (quoting Dkt. 1 ¶ 57).  For one reason, by their careful use of the passive voice, Plaintiffs avoid identifying anyone who has somehow linked iTunes metadata to personally identifying information other than *users themselves*.  *See* Dkt. 1 ¶ 57 (referring to users of Pandora, Spotify, or other apps linking their personally identifiable information from one app to another).  And in any event, the MIPPPA and RIVRPA only impose liability on parties that disclose customers' names or addresses coupled with music-listening information without consent.  Plaintiffs nowhere assert that Apple did any such thing, and Plaintiffs' vague and passively pled "linking" theory is simply no substitute for the type of disclosures both statutes' plain language requires.  *See* Mich. Comp. Laws 445.1712(1); R.I. Gen. Laws § 11-18-32(a).

**B.  Plaintiffs Allege No Facts to Plausibly Demonstrate That Apple Disclosed Names or Addresses to Developers Through Tokens.**

As explained in Apple's motion, Plaintiffs never allege that tokens include or convey anyone's names or addresses.  Plaintiffs respond that it is enough to state that tokens are "capable of association" with "uniquely identifying information by developers."  Dkt. 50 at 14.  This is wrong for two reasons.

*First*, Plaintiffs never allege that Apple or any other entity ever used tokens to disclose their names or addresses, or even to associate their information with other data.  *See generally* Dkt. 1.  They refer to the possibility, but fail to provide factual support.  *See id.* ¶ 63.  Again, this does not advance their pleading from conjecture to plausibility.

*Second*, Plaintiffs rely on superseded cases to argue that, under the analogous Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, a defendant can be liable for disclosing video-viewing

information along with unique identifiers that can be linked to information such as names, addresses, and highly specific geolocation data.  Dkt. 50 at 14–15 (citing *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1225 (C.D. Cal. 2017); *In re Hulu Privacy Litig.*, 2012 WL 3282960, at \*7 (N.D. Cal. Aug. 10, 2012)).

In fact, *Vizio* and *Hulu* predate and were overruled by the Ninth Circuit's decision in *Eichenberger v. ESPN*, 876 F.3d 979 (9th Cir. 2017).  *Eichenberger* held that "personally identifiable information" under the VPPA means information that would "readily permit an ordinary person to identify a specific individual's video-watching behavior."  *Id.* at 986 (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016)).  The *Eichenberger* plaintiff alleged that the defendant disclosed a unique identifier associated with the plaintiff's media player.  *Id.* at 981–82.  He further alleged that a third party linked that identifier to information that could identify the plaintiff and others personally, even though the defendant did not disclose such linked information itself—exactly the "capable of association" argument Plaintiffs advance here.  *See id.*  Applying the "ordinary person" rule, the Ninth Circuit concluded that because an ordinary person could not readily use the unique identifier to identify the plaintiff or anyone else, its disclosure could not trigger VPPA liability.  This is because the statute's plain text conditions liability only on disclosure of personally identifiable information—not information that permits subsequent linking to personally identifiable information.  *Id.* at 985–86.

*Eichenberger* therefore overruled *Vizio* and *Hulu* to the extent those cases held that the possibility of third parties linking non-identifying information to other information could render actionable disclosures of the non-identifying data.  *See Eichenberger*, 876 F.3d at 985–86.  So, beyond the baseline pleading failures discussed above, Ninth Circuit law bars their hypothetical linking theory as a means to state a claim under these statutes analogous to the VPPA.[5]

---

[5] Plaintiffs also argue that the two state statutes do not require disclosure of "names and addresses," but only of information that "would identify the names and addresses of individuals" (R.I. Gen. Laws. Ann. § 11-18-32(a)) or that "indicates the identity of the customer," Mich. Comp. Laws 445.1712(2)—both, of course, coupled with information about the individuals' music licensing information.  Dkt. 50 at 16. But Plaintiffs never explain what information would "identify the names and addresses of individuals"

**C. Plaintiffs Allege No Facts Plausibly Showing That Apple Disclosed Names or Addresses to Developers Through Gifting.**

Plaintiffs do not dispute that the Complaint never alleges that they used the gifting functionality, or that their data was disclosed through it. *See* Dkt. 50 at 15. Instead, they assert the non sequitur that it is sufficient for the named Plaintiffs to show standing, even if unnamed putative class members have not yet done so. *Id.*[6] But Plaintiffs have failed to show standing for *anyone*, and failed to state a claim as to gifting, because—as set out in Apple's motion—Plaintiffs never allege that they or any putative class members used the gifting function at all. Dkt. 37 at 12. This failure requires dismissal of this theory— along with all of Plaintiffs' third-party developer theories, for the reasons set out above.

**III. The Court Should Dismiss Plaintiffs' Michigan Law Claim for the Independent Reason that Plaintiffs Have Not Alleged Actual Damages.**

Even if the Court finds Plaintiffs have adequately pled a violation of MIPPPA, the Court has independent grounds for dismissing this claim because Michigan amended its statute in 2016 to require litigants to plead actual damages, which Plaintiffs have not done. Dkt. 37 at 15; *see* 2016 Mich. Legis. Serv. P.A. 92 (S.B. 490) (West) (stating "that a civil action for a violation of [the MIPPPA] *may only be brought by a customer who has suffered actual damages as a result of the violation*") (emphasis added). Plaintiffs respond that they can still raise claims under the old statute. Dkt. 50 at 19–20. They also contend they have sufficiently alleged actual damages. *Id.* at 20-22. They are wrong on both counts.

**A. The Amended MIPPPA Governs Plaintiffs' Claims.**

The Michigan Plaintiffs argue that their claims accrued before the statute was amended, and that those allegedly accrued claims are vested rights that the statute's amendment cannot revoke—despite their having filed years after the 2016 amendment. Dkt. 50 at 17–19. As Apple explained in its motion, this is wrong: the old MIPPPA no longer exists, and the governing law requires Plaintiffs to assert actual damages, which they fail to do. Dkt. 37 at 15–16.

The Opposition essentially ignores a key Michigan rule governing interpretation of the MIPPPA:

---

or "provide the identity of the customer" other than names and addresses, and the only information they allege was disclosed is names and addresses (coupled with music listening information).

[6] Plaintiffs only discuss this argument as to gifting (Dkt. 50 at 15), but as explained in Apple's motion and above, this problem applies to all of Plaintiffs' claims about third-party developers, not just gifting.

1    "curative" or clarifying amendments can apply to events prior to amendment. *Seaton v. Wayne Cty.*

2    *Prosecutor*, 233 Mich. App. 313, 323 (Mich. Ct. App. 1998). "Courts have consistently upheld the

3    retroactive application of 'curative' legislation which corrects defects subsequently discovered in a

4    statute and which restores what Congress had always believed the law to be." *Id.* at 323.[7]

5        Plaintiffs complain that this cannot be true because applying the amended MIPPPA would "wipe

6    away Plaintiffs' entitlement" to sue under the statute. Dkt. 50 at 20. But if an amendment is curative or

7    clarifying then it is irrelevant that the amendment curbs litigants' ability to sue. *Seaton*, 233 Mich. App.

8    at 323 (applying amendment despite removing plaintiff's right to obtain public records).

9        In amending the MIPPPA in 2016, the Michigan legislature stated explicitly that the amendment

10   was "curative" and that it "intended to clarify" the MIPPPA. 2016 Mich. Legis. Serv. P.A. 92 (S.B.

11   490). Specifically, MIPPPA's amendment followed a spate of cases where courts struggled with

12   whether plaintiffs could sue without alleging actual damages. *See, e.g.*, *Halaburda v. Bauer Pub. Co.,*

13   *LP*, 2013 WL 4012827, at *5 (E.D. Mich. Aug. 6, 2013) (noting "reluctance" to find that the pre-

14   amendment statute did "not require a showing of actual damages"). Michigan legislators knew of these

15   cases when they considered the amendment and thus clarified that the MIPPPA *always* required actual

16   damages. *See, e.g.*, S. 98-33, Reg. Sess., at 473 (MI 2016) (referencing recent MIPPPA litigation during

17   the legislative debate).

18       The amended MIPPPA governs. As held in *Raden v. Martha Stewart Living Omnimedia, Inc.*,

19   2017 WL 3085371 (E.D. Mich. July 20, 2017), the MIPPPA's effective date is July 31, 2016, so claims

20   brought after that date are assessed under the operative statute. Plaintiffs contend *Raden* is wrongly

21   decided under Michigan law (Dkt. 50 at 19), but the case follows the Michigan rule: "the effect of an act

22   amending a specific section of a former act, in the absence of a saving clause, is to strike the former

23   section from the law, obliterate it entirely, and substitute the new section in its place." *Ballog v. Knight*

24   *Newspapers, Inc.,* 381 Mich. 527, 539 (1969) (quoting *People v. Lowell*, 250 Mich. 349, 356 (1930)).

25

26   [7] *See also Mortg. Elec. Reg. Sys., Inc. v. Pickrell*, 271 Mich. App. 119, 127 (2006) (applying
     amendments retroactively where they were "intended to remedy the misinterpretation that [the court]
27   had given the [original statute]"); *People v. Sheeks*, 244 Mich. App. 584, 590 (2001) (holding that
     amendment "may apply retroactively where the Legislature enacts an amendment to clarify an existing
28   statute and to resolve a controversy regarding its meaning").

Plaintiffs try to distinguish *Ballog* by claiming that the MIPPPA's amendment is unlike the amendment in *Ballog* that "operate[d] in furtherance of a remedy or confirmation of rights already existing." Dkt. 50 at 19. But as explained above, the Michigan legislature explicitly stated that it was curing and clarifying the existing statute. Those statements must inform this Court's analysis, regardless of what lower courts in other jurisdictions have said. *See Assoc. des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 (9th Cir. 2013) ("In interpreting a state statute, we apply the state's rules of statutory construction."). For the same reason, Plaintiffs had no vested rights in purported MIPPPA claims: Under their own cases, rights in causes of action vest only when every element of the claim exists. *In re Certified Questions from U.S. Ct. of Appeals for the Sixth Circuit*, 416 Mich. 558, 573 (1982); *Hill v. GM Acceptance Corp.*, 207 Mich. App. 504, 514 (1994). Because the Michigan legislature clarified that the MIPPPA has always required actual damages, Plaintiffs never had a vested right to this claim unless they could satisfy the requisite actual damages element.

Further, Plaintiffs' key case *Horton* relies on inapposite precedent. As Apple's motion explained, the MIPPPA case *Horton* cites concerned whether the amended MIPPPA applied to a complaint filed under the old statute, when the MIPPPA was amended during litigation. 380 F. Supp. 3d at 683 (citing *In re Certified Question from U.S. Ct. of Appeals for Ninth Circ.*, 499 Mich. 477, 483 n.7 (2016)); Dkt. 37 at 16. So *Horton* is inapposite here, where the MIPPPA claim was filed long after the statute's amendment. *Hill*, cited by *Horton* and Plaintiffs, is also distinguishable. The question in *Hill* was not whether an amendment applied retrospectively, but rather when plaintiffs' claims accrued—notably, *Hill* held that they had accrued after the amendment's effective date. 207 Mich. App. at 514.

The court should apply the only extant MIPPPA. To state a claim, Plaintiffs must plausibly allege actual damages, which they have failed to do.

## B. Plaintiffs' Damages Theories Are Deficient.

Plaintiffs argue they have alleged four types of actual damages: (1) overpayment, (2) loss of value in their personal information, (3) junk mail and annoying phone calls, and (4) risk of identity theft.

Plaintiffs' first two theories are essentially "benefit of the bargain" theories, which fail because, as explained in Apple's motion, Plaintiffs never allege that they contracted or bargained for any benefits tied to the MIPPPA. Dkt. 37 at 13–14. Yet for each theory, Plaintiffs cite cases where the complaint

explicitly alleged contracts identifying benefits the defendants promised to provide, but allegedly did

not. Dkt. 50 at 20–21.[8] For example, plaintiffs in *In re Adobe Systems, Inc. Privacy Litig.*, 66 F. Supp.

3d 1197 (N.D. Cal. 2014), alleged that they relied on explicitly promises the defendant made about what

security it would provide. *Id.* at 1224 (citation omitted).[9] Plaintiffs have pled no comparable

representations on which they claim to have relied, so they cannot rely on this theory of damages.

Plaintiffs' third theory, based on alleged receipt of junk mail and unwanted calls, also fails

because Plaintiffs allege no connection between alleged disclosures by Apple and their receipt of mail or

calls. Dkt. 1 ¶¶ 75, 81, 87; *see also* Dkt. 37 at 14–15. As Apple's motion explained, courts have

repeatedly rejected this damages theory, absent concrete, well-pled facts tracing unwanted

communications to the defendant's alleged conduct. Dkt. 37 at 14–15 (citing cases). The Opposition

ignores these cases, but they establish that Plaintiffs' contention—"we got junk mail because of

Apple"—is not a proper allegation of actual damages.

Last, Plaintiffs' damages theory based on a risk of identity theft by "scammers," Dkt. 50 at 22,

fails because Plaintiffs do not allege that any such "scammer" obtained their data, or that they were

scammed. They only allege a "risk" of this, Dkt. 1 ¶ 68, which is legally insufficient. *E.g.*, *Pisciotta v.

Old Nat. Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) ("Without more than allegations of increased risk

of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy"); *Ruiz

v. Gap*, 622 F. Supp. 2d 908, 918 (N.D. Cal. 2009) (holding that although plaintiff had Article III

standing, he had "no actual damages to mitigate since he has never been a victim of identity theft").

Because Plaintiffs fail to adequately allege actual damages, a key element to their MIPPPA

claim, the Court should dismiss that claim on this ground as well.

---

[8] Plaintiffs also cite *Boelter*, 269 F. Supp. 3d at 184, which was not such a contractual case, but *Boelter* never addressed what types of harm constitute actual damages.

[9] *See also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (breach of terms of service and privacy policy); *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) (breach of contract and fraud); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783 (N.D. Cal. May 27, 2016) (breach of contract); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *2 (N.D. Cal. Aug. 30, 2017) (plaintiffs alleged defendants made representations about account security); *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) (implied breach of contract).

**IV.     Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law.**

To state a claim for unjust enrichment, Plaintiffs must plausibly allege Apple's "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  As explained in Apple's Motion, this claim fails for multiple reasons.

*First*, Plaintiffs fail to specify which jurisdiction's law governs this claim. Dkt. 37 at 17 (citing, among other cases, *In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008)).  The Opposition asserts it is "nonsense" for Apple to cite cases from this District dismissing unjust enrichment claims for this exact reason.  Dkt. 50 at 22.  Yet the Complaint never indicates whose law governs Plaintiffs' claim—California, Rhode Island, Michigan, or elsewhere.  This merits dismissal.  *Id.*

*Second*, this claim should be dismissed because Plaintiffs' predicate MIPPPA and RIVRPA theories fail.  Plaintiffs claim that these claims are not based on either statute, but on their having asserted that Apple unjustly retained Plaintiffs' iTunes purchase fees despite allegedly disclosing Plaintiffs' names and addresses plus music-listening information.  Dkt. 50 at 24.  But this theory relies on the same failed assertions of disclosure underlying the statutory claims.  As those allegations are not well pled, they cannot support an unjust enrichment claim any more than they can a statutory claim.

## CONCLUSION

Plaintiffs fail to plausibly allege each of their claims' key element: that the alleged disclosure of music purchase information by Apple included information that would identify its customers, much less their names or addresses.  Repeatedly stating that "Apple disclosed" such information, without including facts making that conclusory assertion plausible, is not sufficient to plead a claim.  For that reason alone, the Court should dismiss the Complaint.  The Court should also dismiss the MIPPPA claim because Plaintiffs fail to adequately allege actual damages, and it should dismiss the unjust enrichment claim because it is improperly pled and is based on the same predicate allegations as Plaintiffs' other claims.

DATED:  September 20, 2019                COVINGTON & BURLING LLP

By:   */s/ Simon J. Frankel*

Emily Johnson Henn (Bar No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square

Palo Alto, California 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

Simon Frankel (Bar No. 171552)
Ethan Forrest (Bar No. 286109)
Sarah Guerrero (Bar No. 322319)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com; eforrest@cov.com;
sguerrero@cov.com

*Attorneys for Defendant*