**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MARK GOTTSLEBEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>INFORMA MEDIA, INC. F/K/A PENTON MEDIA, INC.,<br><br>Defendant. | CASE NO. 1:22-cv-00866-HYJ-RSK<br>CLASS ACTION<br><br>Chief Judge Hala Y. Jarbou<br>Magistrate Judge Ray Kent |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANT INFORMA MEDIA, LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page:**

I. INTRODUCTION ....................1
II. ARGUMENT ....................2
A. Tolling is Not Required or Appropriate ....................2
1. The Orders do not Extend the Availability of Extinguished Statutory Damages and do not Apply to Cases that had no Deadlines During the Tolled Period ....................3
2. Federal Rules of Procedure, and not the Order, Govern ....................4
B. The First Amended Complaint Fails to State a Claim under Rule 12(b)(6) ....................8
C. Plaintiff's Deficiencies Cannot be Cured with An Amended Complaint ....................13
III. CONCLUSION ....................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Sun Chem. Corp.*,
164 F. Supp. 3d 994 (W.D. Mich. 2016) ....................6

*Boelter v. Advance Mag. Publishers.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016)....................11

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016)....................11

*Bowles v. Sabree*,
No. 20-cv-12838, 2022 WL 141666 (E.D. Mich. 2022)....................7

*Bownes v. Borroughs Corp.*,
No. 20-cv-964, 2021 WL 1921066 (W.D. Mich. 2021) ....................7

*Carter v. DTN Mgmt. Co.*,
No. 360772, 2023 WL 439760 (Mich. Ct. App. Jan. 26, 2023) ....................4, 5, 6, 7

*China Agritech, Inc. v. Resh*,
201 L. Ed. 2d 123, 138 S. Ct. 1800 (2018) ....................2

*DelValle v. Informa Media, Inc*,
No. 22-cv-00132 (W.D. Mich.) ....................2

*Edwards v. Hearst Commc'ns, Inc.*,
No. 15CV9279ATJLC, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ....................2

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
307 F.3d 501 (6th Cir. 2002) ....................6

*Griffin v. Reznik*,
609 F. Supp. 2d. 695 (W.D. Mich. 2008) ....................6

*Hanna v. Plumer*,
380 U.S. 460 (1965)....................7

*High Five Threads, Inc. v. Michigan Farm Bureau*,
2021 WL 1809835 (W.D. Mich. May 6, 2021) (Jarbou, J.) ....................13

*Horizon Lawn Maint., Inc. v. Columbus-Kenworth, Inc.*,
188 F. Supp. 3d 631 (E.D. Mich. 2016)....................4, 6

*Horton v. GameStop Corp.*
380 F. Supp. 3d 679 (W.D. Mich. 2018) ....................12

*Mackey v. Rising*,
No. 20-cv-13408, 2021 WL 4034226 (E.D. Mich. 2021)....................7

*Mich Compressor Eng'g Corp. v. Chicken Shack, Inc.*,
No. 10-CV-10059, 2013 WL 4413752 (E.D. Mich. Aug. 15, 2013)....................2

*Moeller v. Am. Media, Inc.*,
235 F. Supp. 3d 868 (E.D. Mich. 2017)....................11

*Nashel and Robinson v. The New York Times Company*,
2022 WL 6775657 (E.D. Mich. Oct. 11, 2022)....................10, 11

*Perlin v. Time Inc.*,
237 F. Supp. 3d 623 (E.D. Mich. 2017)....................11

*Potter v. Comm'r of Soc. Sec.*,
9 F.4th 369 (6th Cir. 2021) ....................2

*Pratt v. KSE Sportsman Media, Inc.*,
586 F. Supp. 3d 666 (E.D. Mich. 2022)....................4

*U.S. ex rel. Sheldon v. Kettering Health Network*,
816 F.3d 399 (6th Cir. 2016) ....................13

*Smith v. BAC Home Loans Servicing, LP*,
552 F.App'x 473 (6th Cir. 2014) ....................13

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
979 F.3d 426 (6th Cir. 2020) ....................9

*Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*,
No. 358526, 2022 WL 17364773 (Mich. Ct. App. Dec. 1, 2022) ....................4

**Statutes**

28 U.S.C. § 2072(a) ....................7

Class Action Fairness Act, 28 U.S.C. § 1332(d) ....................6, 7

Pub. L. No. 109-2, 199 Stat. 4 ....................7

M.C.L. § 445.1712 (1989) ....................8

Rules Enabling Act, 28 U.S.C. § 2072 ....................6, 7

**Other Authorities**

AO 2020-18 ....................5

Executive Order Nos. 2020-58 and 2020-122 ....................2

MCR 1.108....................6

MCR 3.501(A)(5) ....................6

Mich. Ct. R. 7.215(C)(2)....................6

Michigan Court Rule 3.501(F)....................2

Rule 8 ....................13

Rule 12(b)(6)....................8

Rule 23 ....................6, 7

## I. INTRODUCTION.

Plaintiff's Response in Opposition (ECF no. 24, the "Opp.") to Defendant's Motion to Dismiss (ECF no. 20) (the "Motion") attempts to downplay and disguise Plaintiff's generic, conclusory allegations about Defendant's purported disclosure of Plaintiff and the putative class members' "Personal Reading Information" ("PRI"). But the smoke and mirrors cannot mask that the allegations are speculative and not personal to either Plaintiff or Defendant. Rather, the allegations are fueled by a whim, motivated by profiting off of a soon-to-be-obsolete statute, based on general publishing industry practices, canned language used in hundreds of other cases filed by Plaintiff's counsel, unverified information gleaned from internet searches, and baseless assumptions about what "could" have taken place with respect to Plaintiff's PRI.

But Plaintiff admittedly cannot identify who Defendant disclosed his PRI to, when he subscribed to Michigan Farmer, when the PRI was disclosed, who the junk mail came from, and how it could have been caused by Defendant, among other things. And the NextMark data card that Plaintiff references, that supposedly elevates the generic allegations to a cognizable cause of action, actually does the opposite—it does not indicate on what date it was created and is dated almost five years after the supposed conduct at issue, which was only for a narrow three-month period.[1] It also is not a document created by Defendant. In addition, the internet documents to which Plaintiff points to bolster his allegations—the press release about Defendant's SmartReach program and the online privacy policy—are misinterpreted and taken out of context. There is nothing in the press release which supports that individual subscriber names were disclosed to third parties, and nothing in the privacy policy to support that Plaintiff's information was actually

[1] As discussed in n.11, below, this period may be even narrower—only 49 days—if the period at issue is actually June 11, 2016 to July 30, 2016.

disclosed or that notice was insufficient. Yet, Plaintiff nonetheless urges that the allegations are plausible because he "knows how the industry works" (even though he does not allege how Defendant worked).

In addition, this case should not be tolled pursuant to Michigan Governor's Executive Orders (Executive Order Nos. 2020-58 and 2020-122 [the "Executive Orders"]) and the Michigan Supreme Court's Administrative Orders (2020-3, 2020-8, and 2020-18, promulgated by the Michigan Supreme Court on March 23, 2020, May 1, 2020, and June 12, 2020) (the "Administrative Orders") (collectively the "Orders"). The Orders are inapplicable because, among other things, (1) Plaintiff had no deadlines that were set to expire during the tolled period; (2) the Orders did not extend an abolished statutory remedy; and (3) Plaintiff faced no COVID-19-related filing challenge. In addition, the District Court is not obligated to follow the Orders because they are state procedural orders, not federal orders.

## II. ARGUMENT.

### A. Tolling is Not Required or Appropriate.[2]

[2] Plaintiff also attempts to stall a ruling on whether the previously-filed, now dismissed class action *DelValle v. Informa Media, Inc*, No. 22-cv-00132 (W.D. Mich.) provides an additional 57-day toll. *See* Opp., p.3, n.1. Plaintiff tries to distinguish *China Agritech, Inc. v. Resh,* 201 L. Ed. 2d 123, 138 S. Ct. 1800 (2018), which held that an unnamed class member cannot file a follow-up class action following the denial of class certification once the statute of limitations expires. But the Sixth Circuit has already held that once a class action is dismissed, even if there has not been a denied class certification motion, *American Pipe* tolling ceases and the individual class members' statute of limitations clock begins to run. *See Potter v. Comm'r of Soc. Sec*., 9 F.4th 369, 381 (6th Cir. 2021). Moreover, although the PPPA is a state law claim, Michigan is a "cross jurisdictional" state that still recognizes *American Pipe* and its progeny as to state law claims. *See Edwards v. Hearst Commc'ns, Inc.,* No. 15CV9279ATJLC, 2016 WL 6651563, at *2 (S.D.N.Y. Nov. 9, 2016). In addition, because "Michigan has codified the *American Pipe* decision in Michigan Court Rule 3.501(F) (*see Mich Compressor Eng'g Corp. v. Chicken Shack, Inc.,* No. 10-CV-10059, 2013 WL 4413752, at *5 (E.D. Mich. Aug. 15, 2013), *China Agritech's rationale*, which clarified *American Pipe* would apply (as would *Potter*). Plaintiff does not cite any authority which permits the commencement of an otherwise untimely, subsequent state law class action following the dismissal of a previously-filed federal court class action.

Although Plaintiff urges this Court to toll the statute of limitations 101 days based on the Orders,[3] Plaintiff fails to illustrate how the Orders authorize extending a statutory remedy that was eradicated on July 30, 2016, why the Orders are appropriate to apply to a non-pandemic scenario that had no active deadline during the tolled period, and how they extend to federal court proceedings.

### 1. *The Orders do not Extend the Availability of Extinguished Statutory Damages and do not Apply to Cases that had no Deadlines During the Tolled Period.*

Although Plaintiff dismisses as unsupported[4] Defendant's argument that the Orders do not extend the availability of the now-extinguished statutory damages remedy under the PPPA, the plain language of the Orders say otherwise (i.e., they are silent on any manner in which an expired statutory remedy would also be extended—it is not a deadline and not a statute of limitations). And it is not a question of whether the 2016 PPPA amendment applies retroactively[5] – it is a question of whether the plain language of the Orders extends a since-abolished statutory remedy. The answer is clearly no. Just because a court has not yet addressed this issue does not make it meritless, just novel.

Also, on their face the Orders do not apply to Plaintiff's claim and applying tolling in this scenario makes little practical sense. First, a straightforward reading of the Orders indicates that only <u>deadlines</u> that fell between March 10, 2020 and June 19, 2020 are tolled. Plaintiff had no *deadline* that was going to expire between March 10, 2020 and June 19, 2020. Moreover, Plaintiff

---

[3] Which all indicated: "all deadlines applicable to the commencement of all civil and probate actions and proceedings . . . are tolled from March 10, 2020 to June 19, 2020."

[4] Opp, at p. 13.

[5] Opp. at p. 13.

faced no COVID-19-related hurdles that prevented him from commencing this action (and does not claim to). *See Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 358526, 2022 WL 17364773, at *4 (Mich. Ct. App. Dec. 1, 2022) (the need to toll deadlines during the pandemic was a result of "the reluctance of litigants and their attorneys to engage with the court" during the pandemic). In fact, Plaintiff's counsel has been filing PPPA class actions for years and was not prevented from commencing this action before the July 30, 2022 deadline.

Plaintiff's cited authority[6] does not support tolling PPPA claims and, in a recent decision that addressed the PPPA statute of limitations, the Court did not toll anything. *See Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022) (finding that only PPPA claims that accrued on or after June 16, 2015 were timely filed on June 15, 2021 and dismissing claims that accrued on or before June 15, 2015).

**2. *Federal Rules of Procedure, and not the Order, Govern.***

In furtherance of his COVID-19 tolling argument, Plaintiff cites *Carter v. DTN Mgmt. Co.*, No. 360772, 2023 WL 439760 (Mich. Ct. App. Jan. 26, 2023), a recent Michigan intermediate state court decision, which broadly held that AO 2020-3 extended all deadlines 101 days, whether they fell during the state of emergency or not. *Id.* at *3. The *Carter* court found that the administrative orders were authorized because the Supreme Court has constitutional authority to "establish, modify, amend, and simplify the practice and procedure of *all courts of this state*." *Id.* at *4 (emphasis added). It is clear, though, that *Carter*, which is non-binding,[7] does not apply and

---

[6] Opp. At pp. 12-13.

[7] *Horizon Lawn Maint., Inc. v. Columbus-Kenworth, Inc.*, 188 F. Supp. 3d 631, 635 (E.D. Mich. 2016) (while intermediate state appellate court decisions may provide guidance on state law, "they are not binding on federal courts.")

is inherently flawed because: (1) the practical impact is that *any* plaintiff with a limitations period that expires after the close of Michigan's state of emergency would still be entitled to 101 more days to file an action (in other words, if an individual breached a contract in Michigan on March 1, 2020, just prior to the declared state of emergency, the plaintiff would have an additional 101 days beyond the six-year statute of limitations to file a claim; (2) it was an individual slip-and-fall case, not a putative class action; (3) because there are no specific allegations about when the claim accrued, there is no date to determine what period of time could be tolled; and (4) as discussed above, the plain language of the administrative orders only extended *deadlines* that existed between March 10, 2020 and June 20, 2020.

Although *Carter* also relied on AO 2020-18's language (which rescinded the prior administrative orders)[8] in coming to its conclusion,[9] AO 2020-18 did not modify the prior orders with respect to the tolling of a *deadline*. It simply clarified that if a period began to run before the orders were issued, and it had a deadline during the period, the filer would have the same number of days to submit their filings on June 20, 2020 as they had before the orders went into effect. Similarly, it clarified that if a period began to run during the tolled period, the party would have the benefit of the full time period beginning on the date that order was rescinded—June 20, 2020. In addition, Plaintiff recently filed a motion for leave to file supplemental authority (ECF no. 29, Exhibit 1-A) regarding a Report and Recommendation by Magistrate Judge Kimberly G. Altman. *See Briscoe v. NTVB Media* Inc., Case No. 4:22-cv-10352, ECF No. 41 (E.D. Mich. Mar. 3, 2023)

---

[8] "Effective Saturday, June 20, 2020, [AO 2020-3] is rescinded, and the computation of time for those filings shall resume. For time periods that started before [AO 2020-3] took effect, the filers shall have the same number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. For time periods that did not begin to run because of the exclusion, the filers shall have the full periods for filing beginning on June 20, 2020."

[9] *See Carter*, 2023 WL 439760, at *3.

(the "R&R" or "*Briscoe*"). Without any analysis, the R&R outlined that it was bound by *Carter* and simply applied the 101 day tolling period, relying on *Griffin v. Reznik*, 609 F. Supp. 2d. 695, 703 (W.D. Mich. 2008) and Mich. Ct. R. 7.215(C)(2). *Id.* at 35-36). But *Griffin* failed to consider and/or did not have the benefit of various U.S. Supreme Court and Sixth Circuit decisions cited by *Horizon, supra,* that held that a federal court sitting in diversity may disregard a state intermediate appellate court decision if the federal court "is convinced by other persuasive data that the highest court of the state would decide otherwise." *See Horizon Lawn Maint*., 188 F. Supp. 3d at 635. The R&R has not been adopted by the district court judge.

Even if the Court were to adopt *Carter*'s reasoning, *Carter* holds that tolling is a procedural, not substantive, matter. 2023 WL 439760, at *4 (the Michigan Supreme Court's administrative order "modifying the computation of days under MCR 1.108 for purposes of determining filing deadlines[] [was] plainly a procedural matter"). Based on this, the Orders would not apply to federal court actions, even when sitting in diversity. *See Barnes v. Sun Chem. Corp.*, 164 F. Supp. 3d 994, 999 (W.D. Mich. 2016) ("State rules of procedure, particularly those promulgated by a state supreme court, usually have no effect in federal courts because they do not embody a 'substantial policy of the state;' and even whether a state statute is 'procedural in nature,' the Court will apply the federal procedural rule") (quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002)) (emphasis in original).

Federal procedural rules govern this action because Michigan does not allow plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. *See* MCR 3.501(A)(5). This is the reason why Plaintiff invoked federal jurisdiction through the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") (*see*, *e.g.*, FAC, ¶ 17), and, as such, Rule 23 controls. Through the Rules Enabling Act,

28 U.S.C. § 2072, Congress delegated its "power to prescribe general rules of practice and procedure" for cases in the federal courts to the Supreme Court. As the Supreme Court made clear in *Hanna v. Plumer*, 380 U.S. 460 (1965), "the Federal Rules have the status of 'Acts of Congress' through the grant of delegated lawmaking authority that Congress made to the Supreme Court in the [Rules Enabling Act]." *Stephen B. Burbank & Tobias Barrington Wolff, Class Actions, Statutes of Limitations and Repose, and Federal Common Law*, 167 Penn. L. Rev.1, 35 (Dec. 2018) (citing *Hanna*, 380 U.S. 460 (1965); 28 U.S.C. § 2072(a)).

Rule 23 is thus an Act of Congress, and CAFA—which extends Rule 23 and the Court's jurisdiction to this case—is itself an Act of Congress. Pub. L. No. 109-2, 199 Stat. 4. Because this case is governed by the Federal Rules of Civil Procedure, state court procedures, like that set forth in the Orders, do not apply.[10] The *Carter* court also stated that the Orders stemmed from the Michigan Supreme Court's "clear[] concern[] with limiting in person interactions and protecting court staff and the public from COVID-19"—concerns that do not apply in federal courts, given the e-filing system. *See Carter*, 2023 WL 439760, at *4.

The Court should thus find that Plaintiff's PPPA claims are not tolled and that this action is untimely.

---

[10] Although other federal courts have applied the Orders, those cases did not have the benefit of briefing on this issue, they are not PPPA or class action cases, and pre-date *Carter*'s determination that the Orders are procedural in nature. *See, e.g.*, *Bownes v. Borroughs Corp.*, No. 20-cv-964, 2021 WL 1921066, at *2 (W.D. Mich. 2021) *Bowles v. Sabree*, No. 20-cv-12838, 2022 WL 141666, at *9 (E.D. Mich. 2022); *Mackey v. Rising*, No. 20-cv-13408, 2021 WL 4034226, at *2 (E.D. Mich. 2021).

### B. The First Amended Complaint Fails to State a Claim under Rule 12(b)(6).

It is undisputed that, to state a claim under the prior version of the PPPA, a plaintiff must allege facts that, if proven, would show that: (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information. *See* M.C.L. § 445.1712 (1989) (prohibiting disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer"). Like the FAC, it is clear, although buried within a maze of buzz words (which Plaintiff's counsel has asserted against hundreds of others), that Plaintiff possesses only a few generic allegations against the Defendant which are insufficient to state a PPPA claim.

First, he argues that the claims are sufficient because the NextMark (not Defendant's) data card, which covers "*Counts through 05/19/2021*" (FAC, ¶ 2) plausibly demonstrates that Defendant had to have disclosed PRI during the period at issue.[11] However, the data card post-dates the period at issue by <u>five years</u> and does not indicate on which date the card was first generated. The data card also does not support the conclusion that there must have been disclosure of PRI throughout the entire <u>five-year</u> period, and especially during the particular three month window at issue. That is not plausible, especially because the Court cannot infer that Defendant's practices were static throughout the period. It is also not plausible for Plaintiff to assert that the same or "substantially similar" data card was publicly advertised as far back as 2015 based on the exhibit provided—it says nothing about when the data card was first posted, let alone that it was

[11] Paragraph 1, note 1 of the FAC defines it as April 15, 2016 to July 30, 2016, but the Opposition confusingly references it as June 11, 2016 to July 30, 2016 throughout. *See* Opp., p.3,. Although unclear, it appears Plaintiff reduced the applicable period to remove the *Delvalle* toll, discussed in n.1.

available in 2015. *See* FAC, ¶ 2 and Opp, p.9. And, with respect to the Exhibit A document (a purportedly complete data card) that Plaintiff improperly attached to the Opposition[12] to supplement the incomplete exhibit in the FAC[13]—that was conveniently "taken offline" after Plaintiff's counsel purportedly pulled a copy from the internet in June 2022—it still does not contain the URL, date that the document was printed, or owner of the website. The NextMark data card link that Defendant provided in its Motion was to demonstrate to the Court what a complete document and webpage from NextMark would look like, unlike the documents provided by Plaintiff.

Plaintiff also argues that his allegations surpass the plausibility threshold when his allegations and the data card are considered in conjunction with the articles he uncovered about Defendant's SmartReach service launched in 2015 and Defendant's 2015 privacy policy.[14] But again, the SmartReach articles Plaintiff urges the court to consider *do not* support that individual subscriber information was disclosed in violation of the PPPA—they specifically say that all data would be kept *in house* instead of outsourcing it to list vendors (*see* Motion, pp. 15 & 16). Plaintiff also tries to argue, in response to Defendant's argument that the article pertained only to business-to-business marketing efforts, that the sharing of business information necessarily means that business owner information had to have also been disclosed.[15] But the articles do not support that position, and, in reality, the opposite could just as easily be true—that only *business names* are

---

[12] Opp., p.8, n.5.

[13] A plaintiff cannot "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

[14] Opp. p. 29.

[15] Opp, p.30.

disclosed. This is just another self-serving guess, just like Plaintiff's self-serving interpretation of the privacy policy Plaintiff located in archives on the internet. Although Plaintiff insists that the policy supports the disclosure of subscriber information in 2015,[16] the language plainly indicates that Defendant *may receive* information from other sources "with authorization"—not that information was disclosed (which Plaintiff ignores). Plaintiff's attempts to read more into the language based on how "the industry works," and not fact, is exactly the type of speculation that does not pass muster (*see* Opp. p. 21, n. 10).

To that point, Plaintiff attempts to soften the five-year time gap in the data card with the facts from *Nashel*, but his attempts are pained and unsuccessful. As discussed, in *Nashel*, the court found that allegations concerning list broker data cards from 2007 and 2008, in addition to an allegation that the defendant "systemically" engaged in the same disclosures through the relevant period (2016), were insufficient. *Nashel and Robinson v. The New York Times Company*, 2022 WL 6775657 at *5 (E.D. Mich. Oct. 11, 2022). Plaintiff, whose attorney also represented *Nashel* and failed to appeal the decision, tries to distinguish it by pointing to the existence of the data card dated five years subsequent to the period at issue along with the misconstrued privacy policy and press releases, not offered in *Nashel*. But, as described above, this sort of shaky foundation, based in conjecture and not facts specific to Plaintiff or his publication at issue, is of no help, especially where precision of the disclosure period is required, given that the period at issue is only three months long—not five years.[17]

---

[16] Opp., p.20.

[17] In *Briscoe,* discussed *supra*, the magistrate judge opined it was significant that the data card post-dated the conduct at issue and reflected it was "through" 03/31/2022, because the "through" language somehow supported that defendant continued to willfully disclose PRI from the period at issue for six subsequent years. *Id.*, p.17. The magistrate distinguished this "fact" from *Nashel*, where the online card was displayed several years prior to the relevant time period, which

In response to Defendant's claim that Plaintiff also failed to identify which *specific* third parties it supposedly disclosed Plaintiff's and the class members' PRI to, Plaintiff indicates that his allegations are sufficient because he alleged that PRI was disclosed to "consumer facing companies, direct-mail advertisers, and organizations soliciting monetary contributions".[18] But that generic, conclusory language does not make his claim rise above the speculative level. The same goes for the allegation that Plaintiff received a "dramatic uptick" in junk mail. Although Plaintiff touts this canned allegation as especially significant, Plaintiff does not indicate who the junk mail came from, or how it traces back to Defendant or to the unidentified third party "companies" and "direct-mail advertisers" or other "organizations." In addition, causation is absent. Plaintiff does not rule out, and it is reasonable to assume, that he was a subscriber to other types of publications and that the source of the "junk mail influx" may have been at the hand of another entity.

Plaintiff references a variety of cases that he claims held that similar factual allegations were sufficient to state a claim for a PPPA violation. However, none are directly on point and most address standing or exemption arguments, rather than the factual adequacy of a PPPA claim. *See Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 642 (E.D. Mich. 2017) (discussing standing arguments, rather than the adequacy of factual allegations); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) (same); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 453-54 (S.D.N.Y. 2016) (addressing exemption arguments, rather than the adequacy of factual allegations); *Boelter v. Advance Mag. Publishers*., 210 F. Supp. 3d 579, 589-90 (S.D.N.Y.

---

presumably did not answer whether the publisher may have become compliant afterwards. *Id.* But the Magistrate overlooked that the data card did not even contain a date on which it was distributed and failed to consider that the defendant's practices may well have changed between the period at issue and 2022, as well.

[18] Opp., p.7.

2016) (discussing standing arguments, rather than the adequacy of factual allegations). *Horton v. GameStop Corp.* is the only case cited that involved a motion to dismiss that attacked the adequacy of the factual allegations, and nothing in that case supports denial of this Motion. 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018). In *Horton*, the facts did not involve a narrow three-month period because Horton did not wait more than six years after his alleged subscription dates to file suit. *Id.* at 681. Moreover, Horton alleged specific information concerning his own alleged subscriptions that supported the timeliness of his PPPA claim, unlike here. *Id.*

Plaintiff concludes his Opposition by lamenting that requiring additional information to satisfy the pleading threshold would set a standard no PPPA plaintiff could ever satisfy. But this is a disingenuous and blatant exaggeration. A plaintiff must have some basis for filing a lawsuit beyond suspicion, generic industry practices, and an obscure uptick of "junk mail." Another PPPA plaintiff could easily (and has) alleged the date of his/her subscription, the timing and sort of junk mail received, and could uncover a data card or other information the period at issue, among other things. *See*, for example, *Horton v. GameStop Corp.* 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018).

Also, despite Plaintiff's claims that "Defendant does not deny publicly advertising a data card offering to rent and exchange all of its subscribers' Private Reading Information to third parties during the relevant pre-July 31, 2016 time period;" that "[Defendant does not] "deny disclosing Plaintiff's and Class members' Private Reading Information to data appenders and aggregators and all of the various other types of third parties specified in the FAC during the relevant period,[19] Defendant does indeed deny the allegations but cannot meaningfully refute them on this Motion. Should this action survive the pleading stage, Defendant stands ready to disprove them.

---

[19] Opp., p. 32.

In sum, although Rule 8 has attainable standards, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Smith v. BAC Home Loans Servicing, LP*, 552 F.App'x 473, 476 (6th Cir. 2014) (internal citations and quotations omitted). Here, the bare-bones FAC fails to state a plausible claim and should be dismissed. *See High Five Threads, Inc. v. Michigan Farm Bureau*, 2021 WL 1809835, at *4-6 (W.D. Mich. May 6, 2021) (Jarbou, J.) (dismissing the complaint where the plaintiff pled "very few facts," "in conclusory fashion," that taken together "fall[] far short of stating a plausible claim" for relief).

**C. Plaintiff's Deficiencies Cannot be Cured with An Amended Complaint.**

As described *infra*, Plaintiff has had numerous opportunities to properly frame his complaint and he keeps coming up short. He also admitted that he possesses no other facts to substantiate his conclusions without discovery. Thus, any attempts to amend would be futile. *See U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 407 (6th Cir. 2016).

## III. CONCLUSION.

For the foregoing reasons, the FAC should be dismissed with prejudice.

DATED: March 7, 2023

Respectfully submitted,

BLANK ROME LLP

By: */s/ Ana Tagvoryan*

Ana Tagvoryan
ana.tagvoryan@blankrome.com
Harrison Brown
harrison.brown@blankrome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Tel.: 424.239.3400
Fax: 424.239.3434
Attorneys for Defendant
Informa Media, Inc.

**CERTIFICATE OF COMPLIANCE**

The Reply Memorandum in Further Support of Defendant Informa Media, Inc's Motion to Dismiss complies with the word count limitation of W.D. Mich LCivR 7.3(b)(i) because the brief contains 4,260 words, including headings, footnotes, citations, and quotations, and excluding the parts of the brief exempted under W.D. Mich LRevR 7.2(c). The word count was generated using Microsoft Word.

DATED: March 7, 2023

Respectfully submitted,

BLANK ROME LLP

By: */s/ Ana Tagvoryan*

Ana Tagvoryan
ana.tagvoryan@blankrome.com
Harrison Brown
harrison.brown@blankrome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Tel.: 424.239.3400
Fax: 424.239.3434
Attorneys for Defendant
Informa Media, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys or parties of record.

By: */s/ Ana Tagvoryan*
Ana Tagvoryan