## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK GOTTSLEBEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INFORMA MEDIA, INC, F/K/A PENTON MEDIA, INC.,<br><br>Defendant. | Case No. 1:22-cv-00866-HYJ-RSK CLASS ACTION<br><br>Chief Judge Hala Y. Jarbou<br>Magistrate Judge Ray Kent |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT INFORMA MEDIA, INC.'S <u>MOTION TO STAY DISCOVERY</u>

## <u>QUESTION PRESENTED</u>

1. Should the Court issue a stay of discovery despite its own Case Management Order directing discovery to proceed, and where Plaintiff's First Amended Complaint plausibly alleges numerous factual allegations sufficient to support a claim that Defendant violated Plaintiff's rights under the PPPA alleges?

      Plaintiff: No.

## <u>MOST CONTROLLING AUTHORITY</u>

- *AFT Michigan v. Project Veritas*, 294 F. Supp. 3d 693 (E.D. Mich. 2018)

- *Wilson v. ThyssenKrupp Elevator Corp.*, 2022 WL 1618447 (S.D. Ohio Feb. 8, 2022)

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

FACTUAL ALLEGATIONS OF THE FAC..............................................................3

LEGAL STANDARD...............................................................................................7

ARGUMENT ...........................................................................................................8

  A.  The Court Has Repeatedly Expressed a Desire to Move Discovery Forward...8

  B.  The FAC Is More Than Sufficient, Has Merit, and There Is a Strong Likelihood That It Will Not Be Dismissed ......................................................10

  C.  Plaintiff Will Be Prejudiced by a Discovery Stay............................................12

CONCLUSION ......................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*AFT Michigan v. Project Veritas*,
   294 F. Supp. 3d 693 (E.D. Mich. 2018) ............................................................7

*Batts v. Gannett Co.*,
   Case No. 4:22-cv-10685 (E.D. Mich. Mar. 30, 2023)................................. 10, 12

*Boelter v. Advance Magazine Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) ..................................................................12

*Boelter v. Hearst Commc'ns, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) ..................................................................16

*Boelter v. Hearst Commc'ns, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ..................................................................12

*Bozung v. Christianbook, LLC*,
   No. 1:22-cv-304 (W.D. Mich. Mar 6, 2023) ............................................... passim

*Briscoe v. NTVB Media Inc.*,
   No. 4:22-cv-10352 (E.D. Mich. Mar. 3, 2023)......................................................10

*Cochran v. United Parcel Serv., Inc.*,
   137 F. App'x 768 (6th Cir. 2005) .........................................................................13

*Coulter-Owens v. Time, Inc.*,
   308 F.R.D. 524 (E.D. Mich. 2015) .......................................................................16

*Emral v. Bobit Business Media Inc.*,
   Case No. 22-cv-00741 (W.D. Mich. Dec. 5, 2022)................................................9

*Fluresh, LLC v. Aerco International, Inc. and R.L.Deppman*,
   Case No. 1:22-cv-293 (W.D. Mich. Nov. 29, 2022) ..............................................8

*J.S.T. Corp. v. Robert Bosch LLC*,
   2019 WL 2324488 (E.D. Mich. May 30, 2019) ...................................................17

*McVay v. Harvard Business Publishing Corporation*,
   Case No. 22-cv-00802 (W.D. Mich. Dec. 7, 2022)................................................9

*Moeller v. Am. Media, Inc.*,
   235 F. Supp. 3d 868 (E.D. Mich. 2017) ..............................................................12

*Perlin v. Time Inc.*,
   237 F. Supp. 3d 623 (E.D. Mich. 2017) ..............................................................12

*Ruppel v. Consumers Union of United States, Inc.*,
   2017 WL 3085365 (S.D.N.Y. June 12, 2017) ......................................................12

*Wilson v. ThyssenKrupp Elevator Corp.*,
   2022 WL 1618447 (S.D. Ohio Feb. 8, 2022) ......................................................7, 8

**Statutes**

M.C.L. § 600.5805(2) ........................................................................................2

**Rules**

Fed. R. Civ. P. 26(c)(1) ......................................................................................7
Fed. R. Civ. P. 26(a)(1) .....................................................................................18
Fed. R. Civ. P. 34(b) .........................................................................................17

Plaintiff Mark Gottsleben ("Plaintiff"), individually and on behalf of all others similarly situated, submits this response in opposition to Defendant's ("Informa") Motion to Stay Discovery (ECF No. 38 (the "Motion" or "Mot.")).

## INTRODUCTION

In this putative consumer class action, Plaintiff alleges that Defendant violated Michigan's Preservation of Personal Privacy Act ("PPPA") by disclosing, without his consent, information that identified him as (*inter alia*) a subscriber to Defendant's *Michigan Farmer* magazine.  On behalf of himself and others similarly situated, Plaintiff seeks to recover $5,000, as provided by the PPPA, for each of Defendant's statutory violations.

Defendant moves to stay discovery and alleges two grounds: (1) The burden and expense associated with discovery may be unnecessary given that Plaintiff's claim may be dismissed by this Court given its recent decision in *Bozung v. Christianbook, LLC*, No. 1:22-cv-304 (W.D. Mich. Mar 6, 2023); and (2) there is a lack of prejudice to Plaintiff.  Each argument is without merit.

First, this Court's order to dismiss the complaint without prejudice in *Bozung* for a failure to state a claim does not mean that Plaintiff's complaint will likewise be dismissed.  This case is clearly distinguishable from *Bozung*.  Plaintiff's FAC includes numerous factual allegations sufficient to support a plausible claim that Defendant violated Plaintiff's rights under the PPPA before July 2016, the relevant

time period, that were missing in the *Bozung* case, as discussed fully below.

In addition, regardless of its recent decision in *Bozung*, this Court has ordered that discovery move forward expeditiously while Defendant's motion to dismiss is pending. In fact, as recently as March 6, 2023, this Court ordered that a Settlement Conference occur on April 17, 2023. ECF No. 30. Since most of the pertinent facts in this case are in the exclusive custody and control of Defendant, or in the hands of third-parties with special relationships with Defendant, it is crucial that discovery proceed. Discovery is needed not only for the upcoming Settlement Conference to be productive, but also for Plaintiff to meet his burdens going forward.

Second, there is substantial prejudice to Plaintiff and a negative impact on judicial economy if discovery is stayed. Further factual discovery is needed to aid Plaintiff with proving his claim as well as with addressing the issue raised in the Defendant's Motion to Dismiss (ECF 20-1), namely that the "FAC presents no facts to plausibly suggest that the Defendant unlawfully disclosed Plaintiff's PRI to third-parties in violation of the PPPA." *See* Defendant's Motion to Dismiss ("MTD") at 12, PageID.1170. Defendant has stonewalled in its willingness to participate in the discovery process and provide any meaningful discovery. For example, Defendant has failed to provide copies of its contracts or agreements with its data aggregators, data appenders, data cooperatives, and/or list brokers, all of which are central to Plaintiff's PPPA case, and to issues raised by Defendant in its MTD.

The foregoing weighs heavily in favor of the Court denying the stay.  Thus, Defendant's Motion should be denied by this Court.

## FACTUAL ALLEGATIONS OF THE FAC

Defendant maintains a vast digital database comprised of all its customers' information, namely the Private Reading Information ("PRI") "as well as myriad other categories of individualized data and demographic information such as job title, number of employees, livestock type, sales volume, and farm annual income." FAC ¶¶ 13, 49.

During the relevant pre-July 31, 2016 time period, Defendant was continuously "renting, selling, exchanging, and otherwise disclosing" the PRI of its entire database of subscribers to various third parties.  *Id.* ¶¶ 2, 13.  Indeed, since at least 2015 to the present, including throughout the relevant pre-July 31, 2016 time period, Defendant disclosed subscribers' PRI in at least three ways.  *Id.* ¶¶ 68-71. First, Defendant disclosed mailing lists containing Plaintiff's (along with all its other subscribers') PRI to data aggregators and data appenders, "who then supplemented the mailing lists with additional sensitive information from their own databases, before sending the mailing lists back to Informa."  *Id.* ¶ 69.  Second, Defendant disclosed mailing lists containing Plaintiff's (along with all its other subscribers') PRI to data cooperatives, who in turn gave Defendant access to their own mailing list databases.  *Id.* ¶ 70.  And third, Defendant rented and/or exchanged its mailing

3

lists containing Plaintiff's (along with all its other subscribers') PRI—"enhanced with additional information from data aggregators and appenders—to third parties, including other consumer-facing companies, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes." *Id.* ¶ 71.

The FAC includes a screenshot of the US Agriculture Masterfile data card obtained "from Informa Mailing List"[1] which was publicly available on list broker NextMark, Inc.'s website. *Id.* ¶ 2, Ex A. On the data card, Defendant offers to rent or exchange the PRI of all its subscribers—"COUNTS THROUGH" 05/19/2021"— to anyone interested in purchasing it. *Id*. The "data card" states that the "US Agriculture Masterfile reaches individuals who subscribe to one or more of the following Penton titles" and *Michigan Farmer* is one of many publications listed. *Id*. The "data card" encourages anyone interested in purchasing the subscribers' information to do so to "[i]solate and target the right prospect at the right time for your products and services" based on the subscribers "behavioral characteristics." *Id*. The only behavioral characteristic available is each subscriber's behavior related to ordering a specific "Penton title." *Id*. It is plausible to infer from this data card that NextMark could provide this level of detail because the database transmitted to

---

[1] It is reasonable to infer that a mailing list will include at a minimum a customer's name and mailing address.

NextMark from the Defendant contained everyone's product or subscription purchases.

The FAC doesn't stop there though.  These already plausible allegations are further bolstered by factual allegations that demonstrate that Defendant routinely advertised the sale of information about all its customers, including those from 2015 and 2016.  The FAC explains that Penton Media, Inc. purchased Farm Progress from Fairfax Media, which up until November 2012 owned *Michigan Farmer*.  FAC ¶ 3, Ex. B.  On March 26, 2014, Penton announced that it formed Penton SmartReach, a service that "[f]ocused on developing, managing and delivering targeted data and subscriber info to marketers[.]"  *Id*. ¶ 4, Ex. C, Ex. D.  Instead of using list vendors "as it had done previously," to sell, rent, and exchange its subscribers' PRI, it would do it itself.  *Id*. ¶ 5, Ex. C.  "On December 10, 2015, Penton announced the launch of its SmartReach "Audience Extension" Services which would entail sending its "entire database of all of its subscribers' [PRI] to third party data companies for enhancement."  *Id*. ¶ 6, Ex. E.  "Penton's SmartReach division, as well as its Audience Extension service, remained active from its creation in 2014 until at least as recently as its acquisition by Informa in September 2016."  *Id*. ¶ 7, Ex. F.

The FAC also demonstrates that Defendant either itself or through NextMark offered Plaintiff's PRI (and that of the Class) for sale during the period between April 15, 2016 and July 30, 2016.  "In March 2014, Penton moved towards

monetizing its large (then 16 million records) database to support marketing campaigns.  To do so, it created the Penton SmartReach division to sell subscriber data directly rather than through third-party list vendors. As of 2016, the database had grown to some 20 million records." *See* Ex. F, at 4, PageID.630 (ECF No. 16-7), *see id*. ¶¶ 3-7.

The FAC additionally contains factual allegations that Penton in its own Privacy Policy, in the version in effect on July 16, 2016, admitted that it discloses the PRI of all its subscribers to its various publications, which included *Michigan Farmer* magazine, to data appenders, data aggregators, and other third parties. *Id*. ¶ 8, Ex. G.

Thus, the FAC shows that Defendant was renting, selling, exchanging, and otherwise disclosing all its customers' PRI (including Plaintiff's and all Class members' PRI) to third parties between April 15, 2016 and July 30, 2016. *Id.* ¶ 7. As a result of Defendant's practices of disclosing Plaintiff's PRI during the relevant pre-July 31, 2016 time period, Plaintiff received a barrage of junk mail in his mailbox. *Id*. ¶ 1.

Taken together, these facts prove that Defendant (or a list broker) advertised the sale of Defendant's customer information in 2016, specifically between April 15, 2016 and July 30, 2016, and continues to do so.  By renting, exchanging, or otherwise disclosing the PRI of Plaintiff and its other Michigan-resident subscribers

6

during the relevant pre-July 31, 2016 time period, Defendant violated the PPPA. *Id.* ¶¶ 11, 80.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) provides that for "good cause" a court may issue a protective order to protect a party from "undue burden and expense" in the form of a stay of discovery. Thus, district courts have discretion to stay discovery.

It is, however, "well established that the filing of a motion to dismiss does not automatically warrant a stay of discovery." *AFT Michigan v. Project Veritas*, 294 F. Supp. 3d 693, 694 (E.D. Mich. 2018). In fact, courts generally are "not inclined to stay discovery while a motion to dismiss is pending unless certain special circumstances justify that action." *Wilson v. ThyssenKrupp Elevator Corp.*, 2022 WL 1618447, at *3 (S.D. Ohio Feb. 8, 2022). Those "special circumstances" include "when a defendant raises an immunity defense, lack of subject-matter jurisdiction, or 'it is patent that the case lacks merit and will almost certainly be dismissed.'" *Id.* Furthermore, "it is the rare case where the Court will stay discovery based on a pending dispositive motion." *Id.* The court in *Wilson* denied the Defendant's motion to stay discovery, finding that the "statute of limitations inquiry is not a straight forward analysis" that would lend itself to a finding that the case would be almost certainly dismissed. *Id.* It further noted in denying the motion to

stay discovery that the motion to dismiss "will require significant consideration and that the Complaint does not patently lack merit." *Id*. at *4.

In sum, courts "must tread carefully in granting a stay of proceedings since a party has a right to a determination of its rights and liabilities without undue delay." *Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.*, 2022 WL 2232192, at *6 (E.D. Tenn. June 21, 2022).[2]

## ARGUMENT

Defendant in its Motion calls the complaint in the *Bozung* case "nearly identical" to this one.  Mot. at 3, PageID.1641.  This is incorrect.  Plaintiff's FAC here pleads additional factual allegations not present in the complaint in *Bozung*, as described earlier and discussed later as well.  The FAC here has no pleading deficiencies and in fact adequately states a claim for violation of the PPPA that accrued during the relevant pre-July 31, 2016 time period, i.e., between April 15, 2016 and July 30, 2016.  Thus, Defendant's Motion should be denied.

### A. The Court Has Repeatedly Expressed a Desire to Move Discovery Forward

Defendant's motion to stay discovery flies in the face of this Court's directive to move discovery forward in an expeditious manner in this cognate case.  This is

---

[2] Defendant's Motion cites this Court's decision in *Fluresh, LLC v. Aerco International, Inc. and R.L.Deppman*, 1:22-cv-293, ECF No. 50 (W.D. Mich. Nov. 29, 2022) (Jarbou, J.).  Mot. at 3-4, PageID.1641-1642.  However, the Court denied the motion to stay discovery in *Fluresh*.

one of many cognate cases that have been reassigned to this Court. *See, e.g.*, ECF No. 6. In each of these cases, this Court has sought to move discovery forward in an expeditious manner. To that end, this Court was clear at the October 13, 2022 status conference that it would not stay discovery in these cognate cases (ECF No. 13), and has set Rule 16 conferences and case management schedules during the pendency of motions to dismiss, including in this case. *See* ECF No. 15 (Order Setting Rule 16 Conference); ECF No. 23 (Case Management Order). Indeed, this Court has expressly declined to stay discovery pending motions to dismiss in other cognate cases, including *Bozung. See, e.g.*, *Bozung v. Christianbook, LLC*, Case No. 22-cv-00304, ECF No. 29 (W.D. Mich. Sept. 8, 2022) (denying request to stay discovery pending motion to dismiss and issuing Case Management Order); *Emral v. Bobit Business Media Inc.*, Case No. 22-cv-00741, ECF No. 27 (W.D. Mich. Dec. 5, 2022) (denying request to stay discovery pending motion to dismiss and issuing Case Management Order); *McVay v. Harvard Business Publishing Corporation*, Case No. 22-cv-00802, ECF No. 29 (W.D. Mich. Dec. 7, 2022) (denying request to stay discovery pending motion to dismiss and issuing Case Management Order). Despite this clear directive from the Court, Defendant has continued to push to stay discovery by obstructing the discovery process, including on the basis that discovery should be stayed pending resolution of its motion to dismiss. *See also* Plaintiff's Motion to Compel (ECF Nos. 34, 35).

The Court has been clear throughout the pendency of these cognate cases: discovery is to move forward during the pendency of motions to dismiss in these cognate cases, including this case.

**B. The FAC Is More Than Sufficient, Has Merit, and There Is a Strong Likelihood That It Will Not Be Dismissed**

Defendant claims that the "*Bozung* decision increased the likelihood that Defendant's Motion to Dismiss will be successful." Mot. at 4, PageID.1642. Defendant further explains that "the dismissal was based on Bozung's reaching reliance on a 2022 NextMark data card to support the supposed disclosure of subscriber information under the PPPA during an eight-month period six years prior." *Id*. The Defendant alleges that the FAC in this case also "primarily relies on a 2021 NextMark data card." Mot. at 5, PageID.1643. This is inaccurate.

While the FAC does provide a screenshot of a 2021 NextMark card,[3] it also includes numerous other factual allegations to prove that Defendant advertised the sale of customer information back in 2016.

---

[3] A Michigan court has ruled that a NextMark data card from 2022 on its own was sufficient to infer that NextMark possessed similar data of customers prior to July 31, 2016. *See Briscoe v. NTVB Media Inc*., No. 4:22-cv-10352, ECF No. 41 (E.D. Mich. Mar. 3, 2023) (filed on this docket as ECF No. 29-1). And, recently, Judge Kumar denied a similar motion to dismiss where the operative complaint did not even include a data card. *See Batts v. Gannett Co.*, Case No. 4:22-cv-10685, ECF No. 28 (E.D. Mich. Mar. 30, 2023) (filed on this docket as ECF No. 40-1).

Further, as discussed in FAC ¶¶ 4-8, and *supra* at pp. 5-6, Plaintiff here pleads numerous allegations plausibly indicating proof of Defendant's disclosure practices.

As a result of Informa (at the time known as Penton) disclosing Plaintiff's PRI between April 15, 2016 and July 30, 2016, Plaintiff saw a dramatic uptick of junk mail in his mailbox following his purchase of a subscription to *Michigan Farmer* over the same time period.  FAC ¶ 10.  All these facts led Plaintiff to conclude that Defendant advertised the sale of customer information, including his, in 2016.

Thus, the FAC contains many facts plausibly demonstrating that Defendant's practice of renting, selling, exchanging, and otherwise disclosing all its subscribers' PRI was occurring prior to July 31, 2016, during the applicable statutory period that begins on April 15, 2016, just as it continues today.  With these facts, the half-decade gap between NextMark's 2021 datacard and the alleged violation, Plaintiff's allegations against the Defendant are made plausible.  None of these additional factual allegations were present in *Bozung*.  Defendant conveniently ignores these facts to liken this case to *Bozung*, but this faulty comparison fails.  Plaintiff in this case has adequately alleged that Defendant's conduct of disclosing his PRI (and that of the Class) plausibly occurred during the relevant period.

Numerous courts across the country in other PPPA publication cases have overwhelmingly concluded that plaintiffs stated plausible claims for relief based on facts even less robust than those alleged in Plaintiff's FAC.  *See, e.g.*, *See Batts*, Case

No. 4:22-cv-10685, ECF No. 28 (E.D. Mich. Mar. 30, 2023) (filed on this docket as ECF No. 40-1); *Horton*, 380 F. Supp. 3d at 682; *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 642 (E.D. Mich. 2017); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 453 (S.D.N.Y. 2016); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 590 (S.D.N.Y. 2016).

Taken together, these factual allegations—which are well-pled and must be accepted as true at this stage of the proceedings—more than adequately state a claim for relief under the PPPA—and absolutely go well beyond the facts included in the *Bozung* complaint. Unconstrained by the timing issue related to the data cards identified in *Bozung*, and bolstered by Plaintiff's additional allegations here, the allegations of the FAC state a claim for violation of the PPPA, and will likely survive Defendant's Motion to Dismiss. Thus, Defendant's Motion to Stay Discovery should be denied.

### C. Plaintiff Will Be Prejudiced by a Discovery Stay

Plaintiff has a right to a determination of his rights and liabilities without undue delay. Defendant has already caused enough delays related to discovery through its gamesmanship, even though the Federal Rules require parties to respond to discovery requests in good faith. As a result of such gamesmanship, Plaintiff has been substantially prejudiced already and would be further prejudiced if this Court

grants Defendant's Motion.

Plaintiff has been prejudiced by the stonewalling of the Defendant in providing very particular discovery that would assist with proving Plaintiff's PPPA claim, as discussed herein. Thus, this situation differs from the case cited by Defendant in its Motion—*Cochran v. United Parcel Serv., Inc.*, 137 F. App'x 768 (6th Cir. 2005).  Mot. at 4, PageID.1642.  In that case, the Sixth Circuit found that the plaintiff had waived her argument against the district court's decision to grant defendant's motion to stay discovery because plaintiff "never explained to the district court what further evidence she needed to obtain through discovery to prove her case."  *Cochran*, 137 F. App'x at 772 ("Because Plaintiff did not explain to the district court what further discovery she required and because she was not substantially prejudiced, the district court did not abuse its discretion in granting Defendant's motion to stay discovery.").  *Id*. at 773.

As a preliminary matter, further discovery is needed because the main issue raised by Defendant in its MTD is that Plaintiff's complaint is insufficient to state a PPPA violation claim—while at the same time Defendant seeks to put a halt to Plaintiff pursuing discovery that would aid him in proving his claim.  For example, Defendant's MTD states that the FAC "does not say who supposedly received" Plaintiff's PRI or "whether his information was aggregated with other information and subsequently sold."  MTD at 6, PageID.1164.  Defendant also complains that

"Plaintiff fails to . . . state how Defendant profited from any such disclosure of Plaintiff's information or plead if any other data about Plaintiff was obtained by Defendant from third-party sources." *Id*. at 7, PageID.1165.  The MTD also faults the FAC for failing to allege if Plaintiff's information "was in the possession of a data list broker or sold to any data list broker or third-party with appended information for profit." *Id*.  All this information is in the exclusive custody and control of Defendant and will be uncovered through further discovery.

Plaintiff has been moving with alacrity with the help of this Court to uncover such information.  On January 13, 2023, the Parties filed a Joint Status Report pursuant to Rule 26(f).  ECF No. 21.  Thereafter, the Parties participated in a Rule 16 scheduling conference wherein Magistrate Judge Kent adopted a Case Management Order.  *See* ECF No. 23.  Part of that Case Management Order includes a deadline of March 8, 2024 for the completion of discovery.  To meet that deadline, on January 18, 2023, immediately after the Rule 16 scheduling conference, Plaintiff served his First Set of Requests for Production and First Set of Interrogatories. *See* ECF Nos. 35-2 & 35-3.  In response to these discovery requests, on February 22, 2023, Defendant produced *just a single* document.  *See* ECF Nos. 35-4 & 35-5, Defendant's Objections and Responses to Plaintiff's First Set of Requests for Production and Interrogatories.

Defendant is clearly shirking its discovery obligations.  The additional,

eleventh-hour discovery sent by Defendant on March 20, 2023 was likely in response to Plaintiff's March 16, 2023 Motion to Compel Defendant to provide all responsive, non-privileged documents (ECF No. 35). The discovery sent on March 20 included a check from Plaintiff payable to *Michigan Farmer* and a copy of Defendant's insurance policy with AIG. Other than that, there were only two blank List Rental Agreement template samples, and two sample renewal Subscription Forms.

While Defendant is dragging its feet in providing meaningful discovery to Plaintiff, the Court is making it clear that it wants the case to proceed expeditiously. On March 6, 2023, the Court ordered that a Settlement Conference occur on April 17, 2023. ECF No. 30. For that Settlement Conference to be productive, it is imperative that discovery continue—to stay discovery will make the Settlement Conference almost useless.

To date, Defendant has provided nothing through discovery that would assist with the upcoming Settlement Conference, or, more importantly, that is responsive to Plaintiff's discovery requests made to further prove Plaintiff's claims. For example, none of the discovery included contracts or agreements made by Defendant with its data aggregators, data appenders, data cooperatives, and/or list brokers. Defendant objected to the requests made by Plaintiff for this information as "not reasonably tailored to lead to the discovery of admissible relevant evidence and as

phrased is disproportional to the needs of the case." Response No. 2, PageID.1498; Response No. 15, PageID.1528. But of course, these contracts and agreements govern the alleged disclosures at issue and are central to the case. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting summary judgment for plaintiff in a PPPA case and describing defendant's contracts with relevant third parties); *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 528 (E.D. Mich. 2015) (granting plaintiff's motion for class certification in a PPPA case and describing defendant's relationships with third party data companies). And worse yet, on March 8 and 15 meet-and-confer calls, Defendant's counsel refused to identify whether any such contracts existed, and seemingly had not bothered to even investigate. *See* Mot. to Compel at 8, PageID.1462.

Moreover, none of the discovery provided reflects Defendant's privacy policies or opt-out policies, including such documents provided to subscribers. Defendant also did not provide, as requested in Plaintiff's Motion to Compel, a privilege log of otherwise responsive documents that includes sufficient information for Plaintiff to understand the nature of the documents being withheld from production pursuant to any claim of privilege, immunity, or the like. *Id.* at 4, PageID.1458.[4]  Nor has Defendant indicated whether it has informed all relevant

---

[4] Rule 34(b) expressly forbids this sort of gamesmanship, and the Court should not tolerate it. All of Defendant's assertions of privilege, work-product protection, and the like should be deemed waived and Defendant should be ordered to produce all

third parties, including those to whom it may have transmitted customer data during the relevant time period, to institute litigation holds and preserve all documents and information.  *Id.* at 3, PageID.1457.[5]  These third-party entities are unknown to Plaintiff because Defendant refuses to produce its contracts with them.  Moreover, the documents and information at issue here are over six years old, so evidence is even more important to preserve in this context.  *Id.* at 15, PageID.1469.

In addition, Defendant has continually argued that Plaintiff's discovery requests are "overbroad" as it wants to limit discovery to the Farm Progress line of publications, even though this case, as a putative class action, concerns all of Defendant's publications.  *Id.* at 9, PageID.1463.  Plaintiff is properly seeking to represent a class comprised of, generally speaking, all Michigan residents whose personal reading information—i.e., information pertaining to a purchase of any publication from Defendant—was disclosed to a third party pursuant to the same general practices of the Defendant.  *Id.* at 10, PageID.1464.  Thus, Plaintiff is entitled to discovery regarding all of Defendant's publications, not just the Farm Progress

---

materials it has withheld pursuant to those assertions. Alternatively, Defendant should be ordered to produce, forthwith, a privilege log in compliance with Rule 34(b). *See* Mot. to Compel at 16, PageID.1470.

[5] *See J.S.T. Corp. v. Robert Bosch LLC*, 2019 WL 2324488, at *8 (E.D. Mich. May 30, 2019) ("[C]ourts in this district have sanctioned parties for failing to ensure the preservation of information in the possession, custody, or control of a third party where the party had a special relationship with the third party or unique circumstances demanded preservation.").

line of publications, and Defendant's continued objections have substantially prejudiced Plaintiff.

Defendant up until its eleventh hour offer of additional discovery on March 20, had identified only one individual—Sarah Hess—with knowledge regarding the facts of the case in its Rule 26(a)(1) disclosure.  Defendant has now identified a second fact witness, Toni Cumberbatch, Senior Director of Data Monetization at Informa Media, Inc. The notion that there are only two individuals in the entire company who have any knowledge of the facts regarding this case is illogical on its face as neither works in her department alone.  *See* Mot. to Compel at 13-14, PageID.1467-1468.

In sum, Plaintiff has outlined the evidence he needs to obtain through discovery from Defendant to aid in proving his case and thus this Court should find Plaintiff has been and will be substantially prejudiced if Defendant continues to stonewall discovery efforts and if Defendant's Motion to stay discovery is granted.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.


Dated: April 10, 2023                     Respectfully submitted,

                                          */s/ E. Powell Miller*
                                          E. Powell Miller (P39487)
                                          THE MILLER LAW FIRM, P.C.
                                          950 W. University Drive, Suite 300
                                          Rochester, MI 48307

Tel: 248-841-2200
epm@millerlawpc.com

Joseph I. Marchese
Philip L. Fraietta (P85228)
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
aravindran@hedinhall.com

*Counsel for Plaintiff and the Putative Class*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(b)(i)(ii)</u>

Exclusive of the exempted portions pursuant to W.D. Mich. LCivR 7.3(b)(i)(ii), Plaintiff's Response Brief in Opposition Defendant Informa Media, Inc.'s Motion to Stay Discovery contains 4,281 words, in compliance with the four thousand three hundred (4,300) word count limit, as taken from Microsoft Word version 2017.

Dated: April 10, 2023                    Respectfully submitted,

                                            */s/ E. Powell Miller*
                                            E. Powell Miller (P39487)
                                            THE MILLER LAW FIRM, P.C.
                                            950 W. University Drive, Suite 300
                                            Rochester, MI 48307
                                            Tel: 248-841-2200
                                            epm@millerlawpc.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 10, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com