# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA NOCK, individually
and on behalf of all others similarly
situated,

        Plaintiff,                    Civil Action No. 22-cv-11296
                                           HON. BERNARD A. FRIEDMAN

vs.

BOARDROOM, INC. d/b/a
BOTTOM LINE INC.,

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

I.    Introduction

Regina Nock commenced this putative class action against Boardroom, Inc., which does business as Bottom Line, Inc. ("Bottom Line"). She alleges that Bottom Line violated Michigan's Preservation of Personal Privacy Act when it disclosed her personal identifying information to third parties without obtaining her consent.

Before the Court is Bottom Line's motion to dismiss the complaint. (ECF No. 13). Nock responded. (ECF No. 14). Bottom Line filed a reply. (ECF No. 16). The Court will decide the motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court denies the motion.

II.     Background

    A.     *Factual History*

Bottom Line publishes *Bottom Line Personal* newsletter. (ECF No. 1, PageID.5, ¶ 9). Nock subscribed to the newsletter some time before July 31, 2016. (*Id.*). She asserts that Bottom Line disclosed her personal identifying information to "data aggregators, data appenders, data cooperatives, and list brokers," who then disclosed that information to "aggressive advertisers, political organizations, and non-profit companies." (ECF No. 1, PageID.1-2, ¶¶ 1). To supplement these allegations, the complaint includes an embedded screenshot of list broker NextMark, Inc.'s website, offering to rent or exchange the personal identifying information of all Bottom Line's active U.S. subscribers through April 30, 2022. (*Id.*, PageID.2-3, ¶ 2).

    B.     *Procedural History*

Nock filed a putative class action complaint seeking statutory damages under Michigan's Preservation of Personal Privacy Act ("PPPA"). (*Id.*, PageID.21-24, ¶¶ 55-73). She alleges that Bottom Line violated section 2 of the statute, some time before July 31, 2016, by disclosing the personal identifying information of its Michigan subscribers to third parties without their consent. (*Id.*, PageID.3, ¶ 3). Bottom Line now moves to dismiss the complaint. (ECF No. 13).

2

III. <u>Legal Standards</u>

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted). The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV. <u>Analysis</u>

   A. *Statutory Overview*

The Michigan Legislature first enacted the PPPA in 1989. The statute aims to "preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials" and "provide[s] penalties and remedies" for any violations. 1988 Mich. Pub. Acts No. 378; *see also* House Legislative Analysis, Privacy: Sales, Rentals of Videos, Etc., H.B. 5331 (Jan. 20, 1989) ("Many in Michigan also believe that one's choice in videos, records, and books is nobody's business but one's own,

3

and suggest the enactment of a statute to explicitly protect a consumer's privacy in buying and borrowing such items.").

The PPPA initially permitted customers to recover actual damages or $5,000.00, whichever amount proved greater. Mich. Comp. Laws § 445.1715 (1989). The Michigan Legislature amended the statute in 2016 so that recovery is now limited to actual damages. Mich. Comp. Laws § 445.1715(2)(a). The 2016 amendments do not apply retroactively to claims that accrued prior to their effective date – July 31, 2016. *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017). Because Nock focuses her PPPA claim on Bottom Line's pre-July 31, 2016 conduct, the putative class remains eligible to obtain statutory damages under the statute's previous version.

Consistent with this approach, Nock relies upon the pre-July 31, 2016 version of section 2 to the PPPA, which reads:

> [A] person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials . . . shall not disclose to any person, other than the customer, a *record or information* concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1712 (1989) (emphasis added).

Prior to the 2016 amendments, a "record or information" could only be disclosed (1) with the customer's written permission, (2) pursuant to court orders, search warrants, or grand jury subpoenas, (3) to collect payments on outstanding

4

account balances, and (4) for the "exclusive purpose of marketing goods and services directly to the consumer," so long as the disclosing party informed "the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." Mich. Comp. Laws § 445.1713 (1989). The purported disclosures do not fall within any one of these exceptions.

B. *Article III Standing*

Bottom Line's opening thrust raises the most basic question: does the Court possess the jurisdiction necessary to adjudicate this dispute? (ECF No. 13, PageID.583-84).

Federal courts may only hear "cases" and "controversies." U.S. Const., art. III, § 2. Absent this prerequisite, they lack subject matter jurisdiction to entertain a proceeding. *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) ("Where the plaintiff has no Article III standing to bring a case, jurisdiction is lacking and the court must dismiss it."); *see also Detroit v. City of Dearborn*, 206 F.3d 618, 622 (6th Cir. 2000).

Article III standing, as it is commonly known, "developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish Article III standing, Nock must show (1) that she suffered an injury-in-fact, (2) the injury is fairly traceable to the Bottom Line's misconduct, and (3) a decision in her favor is

5

likely to redress the alleged harm. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000).

The United States Supreme Court has recently "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quotation omitted). In its view, "an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis in original).

Bottom Line maintains that Nock lacks Article III standing because her injuries are statutory-based, not the result of personal harm. (ECF No. 13, PageID.584). But in *Coulter-Owens v. Time Inc.*, 695 F. App'x 117 (6th Cir. 2017), the United States Sixth Circuit Court of Appeals arrived at the opposite conclusion. There, the Sixth Circuit found that the plaintiff had Article III standing to assert a PPPA claim because "the violation at issue" infringed upon "the privacy in one's reading materials" and "the disclosure of that information is a cognizable injury in fact for purposes of Article III standing." *Id.* at 121.

District courts in this circuit have consistently followed *Coulter-Owens* and the judges in this district are no exception. *See, e.g., Pratt v. KSE Sportsman Media,*

*Inc.*, 586 F. Supp. 3d 666, 676-77 (E.D. Mich. 2022); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 627-29 (E.D. Mich. 2017); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873-75 (E.D. Mich. 2017). Because there is no principled reason to buck these authorities, Article III standing poses no obstacle to the PPPA claim.

C. *Statute of Limitations*

The parties next spar over whether the appropriate limitations period for PPPA violations is three years, pursuant to Mich. Comp. Laws § 600.5805, or six years, pursuant to Mich. Comp. Laws §600.5813. The shorter timeframe would effectively preclude Nock from proceeding any further since she alleges that Bottom Line's most recent statutory violation occurred on July 30, 2016, just shy of six years before she filed this lawsuit on June 10, 2022.

The judges in this district are no strangers to this issue. The parties' arguments are the latest iteration in a long-running dispute appearing in countless opinions issued from this bench. Those decisions, though, have yielded the same the outcome – that the PPPA's limitations period is six years. *See, e.g., Gaines v. Nat'l Wildlife Fed'n*, No. 22-11173, 2023 U.S. Dist. LEXIS 75317, at *20-23 (E.D. Mich. May 1, 2023); *Pratt*, 586 F. Supp. 3d at 673 (E.D. Mich. 2022); *Nashel v. N.Y Times Co.*, No. 22-10633, 2022 U.S. Dist. LEXIS 185552, at *6-9 (E.D. Mich. Oct. 11, 2022); *Hall v. Farm Journal, Inc.*, No. 21-11811, ECF No. 26, PageID.718 (E.D. Mich. Apr. 5, 2022).

7

Since there is no well-reasoned basis to depart from this line of precedent, the Court likewise concludes that the PPPA's statute of limitations is six-years. *See* Mich. Comp. Laws §600.5813. The PPPA claim is, therefore, timely.[1]

D.  *Rule 12(b)(6) Plausibility*

Bottom Line lastly contends that the complaint falls short of alleging a plausible PPPA claim. (ECF No. 13, PageID.569-74).

Establishing a plausible PPPA violation requires factual allegations that, if proven, would demonstrate that (1) Bottom Line disclosed the relevant information about Nock without her consent, and (2) the information specifically identified Nock to the third parties who received that information. Mich. Comp. Laws § 445.1712 (1989) (prohibiting disclosure "to any person, other than the customer, [of] a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer."); *see also Gaines*, 2023 U.S. Dist. LEXIS 75317, at *9-10.

The complaint asserts that:

- Bottom Line publishes *Bottom Line Personal* newsletter. (ECF No. 1, PageID.5, ¶ 9). Nock subscribed to *Bottom Line Personal* newsletter before July 31, 2016. (*Id.*);

---

[1] The parties contest the extent to which Michigan's executive and administrative COVID-19 orders toll the limitations period. (ECF No. 14, PageID.613-15; ECF No. 16, PageID.678 n.1). Because the PPPA claim is timely even without tolling the statute of limitations, the Court need not pinpoint exactly how far back the challenged conduct remains actionable. That determination would be best answered after the parties complete some form of limited discovery.

8

- Bottom Line rents, exchanges, or discloses its customers' full names, the titles of publications to which they subscribed, and their home addresses, along with other personal demographic information, to data aggregators, data appenders, data cooperatives, and other third parties. (*Id.*, PageID.4, 17, ¶¶ 5, 44);

- Bottom Line disclosed mailing lists containing Nock's personal identifying information to data aggregators and appenders who then supplemented these lists with additional sensitive information from their own databases. (*Id.*, PageID.5-6, 22, ¶¶ 9, 61);

- Bottom Line disclosed mailing lists containing Nock's personal identifying information to data cooperatives in exchange for access to their own mailing list databases. (*Id.*, PageID.5-6, 22, ¶¶ 9, 62);

- Bottom Line rented and/or exchanged its mailing lists containing Nock's personal identifying information to third parties, including other consumer-market companies, direct-mail advertisers, and organizations soliciting money contributions, volunteer work, and votes. (*Id.*, PageID.22, ¶ 63);

- Bottom Line disclosed Nock's personal identifying information to third parties at various times before July 31, 2016. (*Id.*, PageID.1-2, 5-6, 22, ¶¶ 1, 9, 60);

- Bottom Line never obtained Nock's consent to disclose her personal identifying information to third parties. (*Id.*, PageID.5-6, 18, 23, ¶¶ 9, 45-46, 67); and

- Bottom Line never notified Nock that it would disclose her personal identifying information to third parties. (*Id.*, PageID.5-6, 18, 23, ¶¶ 9, 46, 68).

These allegations are more than adequate to show that Bottom Line plausibly violated the PPPA sometime before July 31, 2016.

9

For its part, Bottom Line attacks the complaint solely from an *evidentiary* vantage point. It claims that the screenshot of NextMark's website is not particularized enough to support Nock's allegations. (ECF No. 13, PageID.571-72). This argument misconceives how pleadings are evaluated on a Rule 12(b)(6) motion.

"A complaint survives a motion to dismiss under Rule 12(b)(6) by simply alleging facts sufficient to state a claim to relief that is plausible on its face." *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) (quotation omitted). No "evidentiary support" – whether "in an affidavit or any other form" – is necessary "for a claim to be plausible." *Id.* The complaint must only include "(1) a short and plain jurisdictional statement, (2) a short and plain statement of the claim, and (3) an explanation of the relief sought . . . [t]hat's it." *Id.*; *see also* Fed. R. Civ. P. 8(a). So when federal courts review "the sufficiency of a complaint" their "task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to *offer* evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (emphasis added); *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (holding that "[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.").

Bottom Line also places significant weight on the district court's ruling in *Nashel v. N.Y Times Co.*, No. 22-10633, 2022 U.S. Dist. LEXIS 185552 (E.D. Mich.

10

Oct. 11, 2022). (ECF No. 13, PageID.573-74). As another judge in this district observed:

> to the extent that *Nashel* suggests that to cross the threshold of plausibility, the data card (as opposed to the complaint) must indicate the origin of the allegedly violative information or itself prove that the defendant disclosed the [private reading information] that was listed for sale, the court believes that such a requirement imposes an unnecessary burden of proof on the plaintiff at the pleading stage.

*Gaines*, 2023 U.S. Dist. LEXIS 75317, at *15. The Court concurs with this assessment and finds *Nashel* unpersuasive for the same reason.

Because Nock states a plausible claim for relief under the PPPA – even without the embedded NextMark screenshot – her allegations are alone sufficient to withstand Rule 12(b)(6) scrutiny. Accordingly,

IT IS ORDERED that Bottom Line's motion to dismiss the complaint (ECF No. 13) is denied.

**SO ORDERED.**

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Dated: May 19, 2023　　　　　Senior United States District Judge
Detroit, Michigan

11